UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SHARON MITCHELL, | ) | |
| | ) | |
| Plaintiff, | ) | No. 16-cv-07227 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| PLANO POLICE DEPARTMENT, | ) | |
| CITY OF PLANO, PLANO CITY | ) | |
| ZONING AND ENFORCEMEMNT; | ) | |
| OFFICERS JOHN BEERY, | ) | |
| ROBERT HERNANDEZ, | ) | |
| ANTHONY JOURTAS, SHAWN BARKS, | ) | |
| AARON SMITH, LT. WHOWELL, TOM | ) | |
| ROMANO; TRISH HUTSON, SUSAN | ) | |
| NELSON; AND UNKNOWN | ) | |
| INDIVIDUALS TO BE NAMED | ) | |
| THROUGH DISCOVER, | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER

*Pro se* plaintiff Sharon Mitchell alleges that various Plano officials and two Plano residents have subjected her to a campaign of targeted harassment, violating her constitutional and common-law rights along the way.[1] *See* R. 26, Amended Complaint (Am. Cmplt.) ¶¶ 2-4.[2] The defendants affiliated with the City of Plano have filed a motion to dismiss for failure to state a claim, Fed. R. Civ. P. 12(b)(6), as have the two private-citizen defendants. R. 30, Plano Mot. Diss; R. 38, Hutson Mot. Dismiss; R. 44, Nelson Mot. Dismiss. The private defendants largely incorporate the

---

[1]This Court has subject matter jurisdiction over the 42 U.S.C. § 1983 claims under 28 U.S.C. § 1331, and over the state-law claims under 28 U.S.C. § 1367.

[2]Citations to the record filings are "R." followed by the docket number and, when necessary, a page or paragraph number.

Plano defendants' arguments, but also argue that they were not acting under color of law for purposes of 42 U.S.C. § 1983. *See generally* R. 40, Hutson. Mem.; R. 43, Nelson Mem.

Because Mitchell has not alleged sufficient well-pleaded facts to support her claims, the Court dismisses the Amended Complaint in its entirety. All counts except Count 9 are dismissed without prejudice. Count 9 is dismissed with prejudice because any attempt at amendment would be futile. *See Bogie v. Rosenberg*, 705 F.3d. 603, 608 (7th Cir. 2013). Finally, all counts are dismissed with prejudice insofar as they name the Plano City Police Department and Plano City Zoning Department, which are not suable entities.

## I. Background

For purposes of this motion, the Court accepts as true the factual allegations in the Amended Complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Conclusory assertions that merely restate the elements of a legal claim, on the other hand, are not entitled to the presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 680-81 (2009).

For the most part, the allegations in Mitchell's complaint are too vague, conclusory, or confusing to qualify as well-pleaded facts. For example, Mitchell alleges that between December 2014 and the filing of this case, defendants Hutson and Beery "have either entrapped, seized, and/or made unfounded 911 calls regarding either Mitchell or Plaintiffs dog," but fails to explain when, why, and to whom the calls were made (or what happened to the dog). Am. Cmplt. ¶ 40. This is

not a matter of requiring heightened pleading for Section 1983 claims—there is no requirement like that—but rather requiring Mitchell set forth basic *facts* instead of overall conclusions. Mitchell also claims that Defendant Romano and the Plano Planning and Zoning Board mailed citations to her home with either the incorrect name or "information not provided to them by Mitchell or any individual residing in Plaintiff[']s home." Am. Cmplt. ¶ 41. This allegation does not make clear what happened in any meaningful way. Mitchell further alleges that she has been the recipient, since 2009, of numerous citations on which she was eventually found not liable, Am. Cmplt. ¶ 42, but again she does not provide enough details to understand even the nature of these citations, let alone whether they give rise to a viable claim.

With even less clarity, Mitchell claims that "Defendants continuously defame[] and encourage neighbors within Plaintiff[']s neighborhood to make false allegations against Plaintiff." Am. Cmplt. ¶ 43. She also accuses Romano and unknown police officers of driving through her street in order to surveille, harass, and intimidate her. Am. Cmplt. ¶ 44. Finally, she alleges that all the defendants have abused the court system by causing "numerous arrest warrants" to be issued against her "based on fabricated charges"—but again, provides no detail about the nature of the charges or the defendants' "fabricat[ions]." *Id.* ¶¶ 25-26.

Although it is difficult to glean much in the way of actual facts from the Amended Complaint, it is possible to make out a few concrete factual allegations. The first event of significance is Mitchell's son's arrest in Summer 2009. Am. Cmplt.

¶ 15. Believing the arrest to be unlawful, Mitchell complained about it to the City, the Police Department, and the Kendall County State's Attorney's Office. Am. Cmplt. ¶¶ 17-21. The case against Mitchell's son was eventually dismissed. *Id.*. ¶ 23. According to Mitchell, her complaints about the arrest resulted in a campaign of retaliation against her. *Id*. ¶ 15.

The next set of concrete allegations relate to a series of events in Summer 2010. Mitchell states that in June 2010, Officer Emily Anderson (who is not a defendant) spoke to Mitchell about a call from a neighbor regarding Mitchell's dog. Am. Cmplt. ¶ 29. The following day, Anderson and two other officers came to Mitchell's home. Anderson began knocking on Mitchell's door while the other two officers attempted to enter her gated back yard. *Id*. ¶¶ 29-30. Mitchell does not allege that they actually entered the yard. *Id*. Later that month, Anderson made unspecified allegations against Mitchell "which [Anderson] knew were false." Am. Cmplt. ¶ 24. Mitchell was found not guilty on the resulting charge (whatever it was). *Id*. Around three weeks later, Mitchell received a citation charging her with "Resist/Pc Off/Corr Emply/Frftr" (presumably, resisting arrest). Am. Cmplt. ¶ 31. Mitchell was found not guilty in a bench trial. *Id*. Mitchell complained about the citation to the Plano Police Department, but no action was taken. *Id*.

More than four years later, in October 2015,[3] Mitchell had another negative interaction with Plano police officers. The Amended Complaint states that Officer

---

[3]Apart from vague allegations of harassment, Mitchell does not describe any specific events that happened between 2010 and 2015. The possible exception is the allegation about Mitchell's dog, which she describes as taking place "December, 2014-Present," but it is not clear what behavior Mitchell is alleging in that paragraph. Am. Cmplt. ¶ 40.

Jourtas entered Mitchell's vehicle "without authorization [or] legitimate reason and prepared to search the vehicle until Mitchell appeared." Am. Cmplt. ¶ 34. Jourtas also prevented Mitchell from entering the vehicle. *Id*. When Mitchell requested that Jourtas contact a supervisor, Defendant Barks arrived on the scene. Am. Cmplt. ¶ 35. Mitchell gave Barks documentation about the vehicle, and also contacted the car dealership to verify the information. Am. Cmplt. ¶ 36. Nevertheless, Barks later contacted the dealership to request documents regarding the purchase of the vehicle. Am. Cmplt. ¶ 37.

In November 2015, Mitchell was arrested four times. Am. Cmplt. ¶¶ 32-33. Two of the arrests were for trespass to land, though Mitchell insists that she did not trespass. *Id*. ¶ 32. Mitchell believes that Defendants (she does not say which ones) were "coached" by members of the police department and the state's attorney's office to give false testimony in pending cases against her. *Id*. ¶ 32. She does not say what false testimony was given or how it impacted her cases. The other two arrests were for violation of an Order of Protection. Am. Cmplt. ¶ 33. Mitchell states that this Order was based on fabricated testimony. *Id*. Mitchell identifies Nelson, Hutson, and Beery as connected with the false Order of Protection and the later arrests, but does not say what each did to contribute to the issuance of the Order or the arrests. *Id*.

In January 2016, Mitchell received a notice in the mail stating that she had been found liable for a citation regarding a vehicle with an expired registration. Am. Cmplt. ¶ 38. Mitchell appealed the citation. *Id*. In August 2016, she received the

same citation. *Id*. After several court dates, a Plano City Attorney appeared in court and admitted that the citation was an administrative error. Am. Cmplt. ¶ 39. Despite this acknowledgment, Mitchell has continued to receive correspondence about the two citations. *Id*.

Mitchell alleges that, as a result of the Defendants' conduct, she has suffered false imprisonment, humiliation, embarrassment, ostracism by the community, and other negative consequences. Am. Cmplt. ¶ 64. She further states that her reputation in the community was irreparably damaged when news of her arrests and criminal charges appeared in the local newspapers and online. Am. Cmplt. ¶¶ 50, 80. As a result of this chain of events, Mitchell filed her original complaint on July 14, 2016. R. 1.

## II. Standard of Review

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted. *Hallinan v. Fraternal Order of Police Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). *Pro se* complaints are to be "liberally constructed" and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). That said, even a *pro se* plaintiff must comply with Federal Rule of Civil Procedure 8(a) by providing a statement of the claim sufficient to "give the defendant fair notice of what the… claim is and the grounds upon which it rests." *Erickson*, 551 U.S at 93, quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007).

6

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson*, 551 U.S. at 94. A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. And the allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 679. The complaint is sufficient only if it gives enough factual detail to "present a story that holds together." *Swanson v. Citibank*, 614 F.3d 499, 404 (7th Cir. 2010).

### III. Analysis

Even reading the Amended Complaint liberally and in the light most favorable to Mitchell, all of the counts fail to state a claim. When Mitchell's conclusory allegations are set aside, the remaining facts do not plausibly suggest an entitlement to relief on any of the legal theories she asserts. *See Iqbal*, 556 U.S. at 681.

### A. Improper Defendants

Before getting into the weeds of the complaint, there are a few decisions that the Court can make without extensive discussion. First, the Plano Defendants correctly point out that the Plano City Police Department and the Plano City Zoning and Enforcement Department[4] are improper defendants. The Police Department

---

[4] The proper name of this entity is unclear. Mitchell's caption calls it "Plano City Zoning and Enforcement." *See* Am. Cmplt. ¶ 1. The Plano defendants also call it "Plano City

and the Zoning Department are municipal departments of the City of Plano, and therefore not suable entities; the City of Plano is the real party in interest. Because the Police Department and Zoning Department are not suable, all claims against them are dismissed with prejudice, in accordance with myriad decisions holding that similar entities are not suable. *See Best v. City of Portland*, 554 F.3d 698, 698 n.* (7th Cir. 2009); *Karney v. City of Naperville*, 2015 WL 6407759, at *1 (N.D. Ill. Oct. 22, 2015) (Naperville Police Department is not a suable entity); *Wiseman v. City of Michigan City*, 966 F. Supp. 2d 790, 796 (N.D. Ind. 2013) (city's department of cemeteries is not a suable entity); *Hardy v. Oak Forest Hosp. of Cook Cty.*, 2012 WL 3241623 at *1 (N.D. Ill. 2012) (county-operated Oak Forest Hospital is not a suable entity).

The Court also dismisses Counts 1, 7, 10, and 12 insofar as they name Susan Nelson and Trish Hutson as defendants. Mitchell does not allege that Hutson and Nelson are government officials or employees, and her allegations provide no reason to infer that either was acting under color of law. *See, e.g.*, Am. Cmplt. ¶¶ 14, 137, 155. Because § 1983 requires that the defendant act under color of law, and Mitchell has failed to allege that either Nelson or Hutson did, they are not proper defendants to claims under 42 U.S.C. § 1983.

Mitchell's claims against the City of Plano similarly fall short under § 1983. A local government cannot be sued under § 1983 based on its mere status as the

---

Zoning and Enforcement," but also call it the "Plano Department of Zoning and Enforcement." R. 31, Def. Mem. 1-2. Plano's website seems to list it as "Building, Planning, & Zoning." *See* http://www.cityofplanoil.com/Directory.aspx?did=4. Whatever the proper name of this entity, it is not suable on its own.

employer of its employees or agents. *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 694 (1978). A municipality like Plano can only be sued if its agents are carrying out (1) an express municipal policy; (2) a widespread, though unwritten, custom or practice; or (3) a decision by a municipal agent with final policymaking authority." *Kristofek v. Vill. of Orland Hills*, 832 F.3d 785, 799 (7th Cir. 2016) (quotation marks omitted). Mitchell's assertion that Plano had an official policy of retaliating against its critics merely restates the legal conclusion required by *Monell*. *See* Am. Cmplt. ¶ 51-55. Her vague allegations that the Defendants' conduct was done "at the behest, direction, and with the knowledge of policymakers" is similarly just a conclusion, with no supporting facts. Am. Cmplt. ¶ 53. And although an allegation of a pattern of constitutional violations could be sufficient to raise an inference of a municipal policy, *see Strauss v. City of Chi.*, 760 F.2d 765, 768 (7th Cir. 1985), Mitchell, as explained below, has not plausibly alleged that her constitutional rights were violated. *See also id.* at 769 (explaining that generalized allegations of frequent "illegal arrests" are insufficient to show existence of a municipal policy). Because Mitchell has not alleged facts giving rise to an inference of official policy, her § 1983 claims against the City are also dismissed.

Next, all counts against Lieutenant Whowell are dismissed. The Amended Complaint does not identify any actions taken by Whowell. Mitchell might have been suing Whowell as a supervisor of the other officer-defendants, but this is not clear from the complaint. What's more, for a supervisor to be liable for deprivation of a constitutional right, he must be "personally responsible for the deprivation"—

that is, he must "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what [he] might see." *Matthews v. City of E. St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012) (citations and quotation marks omitted). Mitchell has not alleged that Whowell approved or turned a blind eye to his subordinates' misconduct, or, indeed, that he did anything at all. Thus, she has stated no claim against Whowell.

Finally, the Plano Defendants argue that they are immune from liability for certain claims under the Illinois Local Governmental and Governmental Employees Tort Immunity Act, 745 ILCS 10/8-101(a) *et seq.* See R. 31, Def. Mem. 13-14. Statutory immunity under the Tort Immunity Act is an affirmative defense. *Michigan Ave. Nat. Bank v. County of Cook*, 732 N.E.2d 528, 535 (Ill. 2000). Mitchell need not plead around an affirmative defense, so the Court declines to consider at the pleadings stage which defendants are immune under the Tort Immunity Act.

### B. Unlawful Arrest Claims (Counts 1 and 4)

Count 1 asserts that Mitchell was denied her Fourth Amendment right to be free from unreasonable seizure of her bodily person.[5] Count 4 is a state-law claim for false arrest and imprisonment.[6] Because the elements of these claims overlap

---

[5] Mitchell's Amended Complaint claims only seizure of her person. Am. Cmplt. ¶¶ 66-75. Mitchell does not claim an illegal search of her vehicle, even though she alleges that Defendant Jourtas entered her vehicle without reason. Am. Cmplt. ¶ 33. Nor does she try to state a claim based on the attempted entry into her yard. Am. Cmplt. ¶¶ 29-30.

[6] Mitchell has not alleged any specific instance of imprisonment. So the Court treats the claim as only one for false arrest. But even if Mitchell is alleging that each of her arrests resulted in false imprisonment, her claim would still fail. She has not alleged lack of

and they arise out of the same events, the Court will address Counts 1 and 4 together.

A plaintiff must plead lack of probable cause in order to succeed on either a Fourth Amendment false arrest claim or an Illinois common-law false arrest claim. *Neita v. City of Chi.*, 830 F.3d 494, 497 (7th Cir. 2016); *Kincard v. Ames Dep't Stores, Inc.*, 670 N.E.2d 1103, 1109 (Ill. App. Ct. 1996). "Police officers possess probable cause to arrest when the facts and circumstances within their knowledge and of which they have reasonably trustworthy information are sufficient to warrant a prudent person in believing that the suspect had committed an offense." *Williams v. Rodriguez*, 509 F.3d 392, 398 (7th Cir. 2007) (internal quotation marks omitted).

Mitchell fails to allege lack of probable cause for her trespass arrests. Although she claims that the testimony in her trespass cases was "coached," *see* Am. Cmplt. ¶ 32, coached testimony at *trial* does not negate probable cause for an *arrest*. Probable cause is evaluated at the time of arrest, *United States v. Breit*, 429 F.3d 725, 728 (7th Cir. 2005), so later false testimony would have no impact on the existence of probable cause for arrest. Nor does Mitchell's alleged innocence of the trespassing charges demonstrate a lack of probable cause. *Pierson v. Ray*, 386 U.S. 547, 555, 557 (1967). Probable cause is not evaluated based upon "the facts as an omniscient observer would perceive them, but instead is determined by the facts as

---

probable cause for any possible imprisonment. *See Makowski v. United States*, 27 F.Supp.3d 901, 917 (N.D. Ill. 2014) (explaining that, under Illinois law, a plaintiff must show that he was restrained unreasonably or without probable cause).

they would have appeared to a reasonable person in the position of the arresting officer." *Williams*, 509 F.3d at 398-99 (internal quotation marks omitted). Without facts suggesting that Mitchell's innocence was known to her arresting officer, her alleged innocence has no impact on the existence of probable cause for her arrest.

Mitchell equally fails to allege lack of probable cause for her arrests for violation of the Order of Protection. Am. Cmplt. ¶ 33. Even if the underlying Order was based on false testimony, an officer could still have had probable cause to arrest her for violating it. And even if Mitchell did not violate the Order, she still has not alleged facts from which to infer that there was no probable cause to arrest her. *See id*. This is not to say, of course, that false arrest claims require elaborate factual detail at the pleading stage. They do not. But Mitchell's complaint has provided *no* facts tending to show lack of probable cause for the Order of Protection arrests (there is not even a concise explanation of the circumstances of the arrests), and so must fail. *See, e.g.*, *Glanz v. Illinois*, 2016 WL 2344587 at *3 (N.D. Ill. May 4, 2016) (plaintiff's allegation that her arrest was "unlawful" was insufficient to plead lack of probable cause when the complaint said nothing about the facts and circumstances known to the arresting officer at the time of arrest); *Bugariu v. Town of St. John, Ind.*, 2014 WL 958025 at *1, *3 (N.D. Ind. Mar. 12, 2014) (allegation that plaintiff was arrested "[a]s a consequence of false and unjust charges" after denying knowledge of the crime was insufficient to allege lack of probable cause).

Finally, the series of allegations about Mitchell's son's arrest cannot support Counts 1 and 4. The first problem is that Mitchell's son was arrested in 2009. False

12

arrest claims accrue on the day of arrest. *Wallace v. City of Chi.*, 440 F.3d 421, 427 (7th Cir. 2006). The statute of limitations for § 1983 violations occurring in Illinois is two years, and Illinois's statute of limitations for tort claims against government employees is even shorter. *See Smith v. City of Chicago Heights*, 951 F.2d 834, 839 (7th Cir. 1991); 745 ILCS 10/8-101(a). The Court may consider affirmative defenses on a motion to dismiss when the complaint *itself* sets forth everything necessary to satisfy the affirmative defense—as this complaint does. *See Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009). The complaint gives the exact date of the arrest—August 21, 2009—so it is clear that a claim based on Mitchell's son's arrest is time-barred.[7] *See* Am. Cmplt. ¶ 15. And even if this claim was not time-barred, Mitchell has given the Court no reason to think that she herself has standing to complain of an injury to her son. Because none of the arrests described in the Amended Complaint can support a false arrest claim under either the Fourth Amendment or Illinois law, Counts 1 and 4 are dismissed.[8]

### C. Defamation (Count 2)

Mitchell alleges in Count 2 that all of the Defendants have defamed her. The essential elements of a defamation claim under Illinois law are that (1) the

---

[7] Mitchell makes a passing reference to the continuing violation doctrine in her response brief, R. 32, Pl. Resp. at 4. But nothing about the Amended Complaint indicates that application of the continuing violation doctrine would be appropriate. The arrest was a discrete event, and Mitchell's own allegations demonstrate that she understood its unlawful nature at the time and complained about it to many city and county officials. Am. Cmplt. ¶¶ 16-21.

[8] The Court notes, for the sake of thoroughness, that Mitchell has not alleged that she was arrested (or imprisoned) in connection with either of the 2010 charges she describes. *See* Am. Cmplt. ¶¶ 24, 29-31. Nor has she alleged that she was arrested during the October 2015 car search. *See* Am. Cmplt. ¶¶ 34-37.

defendant made a false statement about the plaintiff; (2) the defendant made an unprivileged publication of that statement to a third party; and (3) the publication caused damages. *Dobais v. Oak Park and River Forest High Sch. Dist. 200*, 57 N.E.3d 551, 562 (Ill. App. Ct. 2016).

The main problem with the defamation claim is that Mitchell fails to adequately allege a false statement. Mitchell states broadly that defendants defamed her by making false statements in police reports, affidavits, and applications for arrest warrants. Am. Cmplt. ¶ 79. But because she fails to identify any particular statement, let alone allege facts suggesting that the statement was false, she has done nothing more than restate the first legal element of defamation. Likewise, her statement that Anderson "made allegations, which she knew were false" merely restates the legal conclusion. *Id.* ¶ 24. And although Mitchell alleges that news of her arrests and criminal charges was published in the local papers, Am. Cmplt. ¶ 80, she does not actually allege that this news—that she was arrested and charged—was *false*. Mitchell's own complaint demonstrates that she indeed *was* arrested and charged many times, so a statement that she had been arrested and charged is factually true. *See* Am. Cmplt. ¶¶ 24, 32, 33. Finally, to the extent Mitchell claims that a particular Defendant's testimony defamed her, her claim must fail; false statements made in a legal proceeding are absolutely privileged against defamation actions. *Defend v. Lascelles*, 500 N.E.2d 712, 714 (Ill. App. Ct. 1986).

14

Mitchell also fails to coherently allege publication by the Defendants, which is another required element of defamation. Even though the complaint states that "the defamatory statements were published to others within the Police Department and City of Plano" and that the "arrest and criminal charges were published to the local papers," it is not clear whether Mitchell is alleging that *Defendants* published this information or just stating that *someone* published it. Am. Cmplt. ¶ 80. Only a few paragraphs above, her theory seems to be that the "publication" occurred when the Defendants arrested her, and did so knowing that arrests are public record. Am. Cmplt. ¶ 78. This would be insufficient to constitute publication, and moreover is not a false "statement." But even if Mitchell does switch gears to allege that the Defendants were directly responsible for the publication, she does not say *which* defendant or defendants published the statements. Because Mitchell has not alleged that any particular defendant published the false statements, she has failed to allege a causal connection between any defendant's conduct and the publication of the false statement. Thus, the defamation claim fails on publication grounds as well.

### D. False Light Invasion of Privacy (Count 11)

Mitchell's false-light claim has similar problems. For a false-light invasion of privacy claim, a plaintiff must allege that (1) she was placed in a false light before the public as a result of the defendants' actions; (2) the false light in which she was placed would be highly offensive to a reasonable person; and (3) the defendants acted with actual malice, that is, with knowledge that the statements were false or

15

with reckless disregard for whether the statements were true or false. *Kapotas v. Better Gov't Ass'n*, 30 N.E.3d 572, 595 (Ill. App. Ct. 2015).

For the most part, Mitchell's allegations are too general to support her claim. She alleges that the Defendants placed her in a false light by coming to her home, arresting her, and having this arrest information disseminated in the local paper. Am. Cmplt. ¶¶ 141, 142, 144. But here again, Mitchell does not give factual information about what the relevant acts or statements were, and why they were false. A mere allegation that she was "falsely" arrested or that police came to her home without cause is not enough. "Absent some allegation as to what specific statement was false, a claim based on *false* light simply fails to satisfy the most basic element of the cause of action." *Kirchner v. Greene*, 691 N.E.2d 107, 116 (Ill. App. Ct. 1998) (emphasis in original). *See also, e.g., Perry v. City of Indianapolis*, 2012 WL 729728, at *3 (S.D. Ind. Mar. 6 2012) (plaintiff's false-light claim failed when she did not explain what information led to her allegedly false arrest and imprisonment, or what evidence prosecutor presented to the grand jury that placed her in a false light); *Shea v. Winnebago Cty. Sheriff's Office*, 2014 WL 4449605, at *21 (N.D. Ill. Sept. 10, 2014) (plaintiff's false-light claim failed when he did not identify what defendants' allegedly false representations were). And, as with Mitchell's defamation claim, her false light claim must fail to the extent it depends on the Defendants' testimony in legal proceedings, because testimony is absolutely privileged. *See Kurtz v. Hubbard*, 973 N.E.2d 924, 928-29 (Ill. App. Ct. 2012).

Apart from the complaint's failure to identify particular false statements, the false-light claim also fails to connect particular statements to individual defendants, and so neglects to allege that any particular defendant caused Mitchell to be placed in a false light. Even the more thoroughly described events in the complaint lack connection to specific defendants. The closest Mitchell comes is stating that Nelson, Hutson, and Beery were somehow connected with the false Order of Protection, but even so it is unclear what role each defendant played. *See* Am. Cmplt. ¶ 33. Similarly, Mitchell alleges that Barks, Jourtas, and unknown officers placed her in a false light at a Plano High School football game, but does not say what they did. *Id*. at ¶ 144. Without a connection between specific events and specific defendants, Mitchell has not alleged that she was placed in a false light as a result of any defendant's actions.

The disconnect between particular defendants and actions also means that Mitchell has failed to allege the malice element of false light. Without knowing anything more about the relevant events or statements and which defendants are responsible, there are no facts to support an inference that the Defendants acted with knowledge or reckless disregard for whether the statements were true or false. Here again, a mere statement that the Defendant "knew" the statements were false is conclusory, and thus insufficient to plead malice. *See, e.g.*, Am. Cmplt. ¶ 143.

17

**E. Emotional Distress (Count 3)**

Count 3 of the Amended Complaint is a claim for intentional infliction of emotional distress. Under Illinois law, a plaintiff claiming intentional infliction of emotional distress must allege that (1) the defendant's conduct was "extreme and outrageous;" (2) the defendant either intended that his conduct inflict severe emotional distress or knew that there was at least a high probability that his conduct would cause severe emotional distress; and (3) the defendant's conduct in fact caused severe emotional distress. *Schweihs v. Chase Home Fin., LLC*, 77 N.E.3d 50, 63 (Ill. 2016), *reh'g denied* (Mar. 27, 2017). The bar for proving "extreme and outrageous" conduct is set high. Only conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community" is sufficient to make out an intentional infliction of emotional distress claim. *Id.* (citing Restatement (Second) of Torts § 46 cmt. d Am. Law Inst. 1965)).

A campaign of targeted harassment and intimidation by police officers, neighbors, and city officials might qualify as extreme and outrageous conduct. But with the vague and conclusory allegations stripped out, all that is left is a handful of negative encounters with the police over a period of six or seven years. What's more, the Amended Complaint leaves a four-year gap between 2010 and 2014 where *no* specified events occurred, undermining the claim that Mitchell was the target of sustained and continuous harassment dating from 2009. The events she describes are so disjointed that it is hard to draw a rational connection between them: in

18

October 2015 Mitchell's car was searched; in November 2015 she was arrested; and the next year she received some unexplained vehicle citations. *See* Am. Cmplt. ¶¶ 34-35, 32-33, 38-39. This series of events is not the type of sustained harassment that might qualify as extreme and outrageous enough for an emotional-distress claim. So the claim for intentional infliction of emotional distress is dismissed.

### F. Malicious Prosecution (Count 5)

In order to state a claim for malicious prosecution under Illinois law, a plaintiff must allege (1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages. *Logan v. Caterpillar, Inc.*, 246 F.3d 912, 921-22 (7th Cir. 2001). None of the events laid out in the Amended Complaint meets these requirements.

The most obvious defect in Mitchell's complaint is her failure to allege that the November 2015 proceedings terminated in her favor. She provides no information about the outcome of the four November 2015 arrests.[9] *See* Am. Cmplt. ¶¶ 32-33. And Mitchell herself states that the Order of Protection proceeding did not terminate in her favor, because an Order was issued against her. *Id.* ¶ 33. Because Mitchell has not pled that any of the November 2015 proceedings terminated in her favor, these events cannot be the basis of a malicious prosecution claim.

---

[9] Mitchell does not state outright that these arrests led to criminal proceedings, but the Court will assume that they did for the sake of thoroughness.

Mitchell *does* allege that the 2010 prosecutions terminated in her favor, but any claim based on those prosecutions is clearly time-barred based on the allegations themselves. Am. Cmplt. ¶¶ 24, 31. And even if claims based on the 2010 proceedings were not time-barred, Mitchell has not alleged lack of probable cause for bringing the proceedings. Her statement that her arresting officer "made allegations, which she knew were false" is not sufficient to show lack of probable cause, especially when Mitchell does not describe what the "allegations" were or what role (if any) they played in the proceedings. *See id*. ¶ 24.

The only other specific incidents that might amount to malicious prosecution are the two 2016 citations for expired vehicle registration. Am. Cmplt. ¶¶ 38-39. The sequence of events is not entirely clear, but it seems that Mitchell was mailed an incorrect citation in January 2016, and despite an appeal, was mailed the same citation in August 2016. *Id*. ¶ 38. A Plano city attorney admitted that the citations were sent in error, but Mitchell has continued to receive mail about them through the filing of her original complaint. *Id*. ¶ 39. But here Mitchell has failed to allege either malice or damages. The events she describes sound like administrative blundering, not malice. What's more, Mitchell has not stated that she was made to pay the citations, so it is unclear how she was injured by the mistake.

In sum, although Mitchell manages to allege isolated elements of malicious prosecution claims, she never quite succeeds in stating all the elements as to any one sequence of events. Thus, her malicious prosecution claim must also be dismissed.

20

## G. Freedom of Speech (Count 7)

Mitchell's next theory of recovery is that Defendants conspired against her in order to retaliate against her for exercising her First Amendment rights. Am. Cmplt. ¶¶ 112-17. To make out a case of First Amendment retaliation, a plaintiff must show that (1) she engaged in activity protected by the First Amendment, (2) she suffered a deprivation that would likely deter First Amendment activity, and (3) the First Amendment activity was at least a motivating factor in the police officer's decision. *Thayer v. Chiczewski*, 705 F.3d 237, 251 (7th Cir. 2012).

The final element stymies this claim. The only protected speech activity Mitchell describes seems to have occurred in 2009 or so.[10] There is no plausible inference, on the facts alleged, that the Plano police were still harassing Mitchell in 2015 or 2016 because of her complaints seven years ago. Indeed, Mitchell has not alleged that the officials responsible for the later incidents (Anderson, Beery, Barks, Jourtas, and Romano) even knew about Mitchell's 2009 complaints. What's more, the officers responsible for the 2009 arrests and follow-up, Hernandez and Smith, were not involved in any of the later incidents. The long time lapse between the 2009-2010 incidents and Mitchell's 2015 arrests also cuts against an inference of retaliation. A string of sporadic incidents occurring years after the protected speech and involving completely different officials is simply not enough to give rise to an

---

[10]The timeline is unclear. Yes, the Amended Complaint states that Mitchell's son was arrested in August 2009, and Mitchell's complaints seem to have begun shortly thereafter, but it is unclear when the back-and-forth over the arrest ended.

inference that the protected speech was a motivating factor in the events Mitchell describes.

## H. Obstruction of Justice (Count 9)

Mitchell's ninth count is labeled "obstruction of justice." There is no stand-alone civil action for obstruction of justice in Illinois—which Mitchell should know from her previous case before this Court. *See Mitchell v. City of Elgin*, 2016 WL 492339 at *7 (N.D. Ill. Feb. 9, 2016); *see also Panko v. United States*, 1987 WL 11340, at *1 (N.D. Ill. May 22, 1987); *Jones v. United Airlines*, 2012 WL 6216741, at *8 (N.D. Ill. 2012). Count 9 is dismissed with prejudice.

## I. Equal Protection (Count 10)

Defendants argue that Mitchell has not stated an equal protection claim because she has not alleged that she was a member of a protected class or that she was treated differently than others similarly situated. But the Seventh Circuit recognizes that for "class-of-one" equal protection claims, a plaintiff need not allege that she was treated differently than similarly-situated individuals. *See, e.g.*, *Geinosky v. City of Chi.*, 675 F.3d 743, 745 (7th Cir. 2012). When a defendant's allegations demonstrate a campaign of "deliberate and unjustified official harassment"—misconduct that cannot be explained by police discretion or a couple of mistakes—she has stated a class-of-one equal protection claim. *Cameron v. City of Chi.*, 2017 WL 3421474, at *4 (citing *Geinosky*, 675 F.3d at 745).

Unfortunately, Mitchell has not stated a viable class-of-one claim. Although the precise standard for class-of-one claims is currently unresolved in the Seventh

Circuit, Mitchell's complaint fails under either possible standard. As discussed above, when Mitchell's conclusory allegations are disregarded, the conduct she describes boils down to a handful of disjointed incidents spread out over seven or eight years. Given the police's broad discretion and the lack of apparent connection between these incidents, it is not plausible to infer either that the conduct was a result of intentional discrimination lacking a rational basis, or that Mitchell was a "victim of discrimination intentionally visited on him by state actors who knew or should have known that they had no justification … for singling [her] out for unfavorable treatment." *See Cameron*, 2017 WL 3421474, at *4 (citing *Marcelle v. Brown Cty. Corp.*, 680 F.3d 887, 889, 913 (7th Cir. 2012) (separate en banc opinions)).

### J. Due Process (Count 12)

Mitchell's final constitutional theory is that Defendants violated her right to due process of law. Like her other claims, this one falls short on factual grounds. The Seventh Circuit has held that evidence fabrication can lead to a due process claim under § 1983. *Saunders-El v. Rohde*, 778 F.3d 556, 560-61 (7th Cir. 2015). But Mitchell does not allege that any of the Defendants fabricated *evidence* against her. She does allege that they fabricated *testimony*, Am. Cmplt. ¶¶ 24, 26, 32, 33, but witness testimony is absolutely immune from § 1983 claims. *See Briscoe v. LaHue* 460 U.S. 325, 345 (1983); *Curtis v. Bembenek*, 48 F.3d 281, 284 (7th Cir. 1995) (absolute immunity extends to police officer participation in pretrial proceedings); *Barksdale v. Joyce*, 2017 WL 3776237, at *1 (7th Cir. Aug. 31, 2017).

The rest of Mitchell's grievances cannot give rise to viable due process claims. The Fourth Amendment, not the due process clause, is the proper basis for challenging the lawfulness of an arrest. *Alexander v. McKinney*, 692 F.3d 553, 558 (7th Cir. 2012). And malicious prosecution is not actionable under the due process clause if the relevant state provides a remedy, which Illinois does. *Ray v. City of Chi.*, 629 F.3d 660, 663 (7th Cir. 2011); *Huon v. Mudge*, 597 F. App'x. 868, 877 (7th Cir. 2015). Because Mitchell has not complained of conduct that amounts to a due process violation, Count 12 must also be dismissed.

### K. Indemnification and Respondeat Superior

Counts 6 and 8 are claims for respondeat superior and indemnification. Because the Court has dismissed all of Mitchell's underlying tort and constitutional claims, these two claims are also dismissed.

### IV. Conclusion

For the reasons stated above, Counts 1 through 8 and Counts 10 through 12 are dismissed without prejudice, except as to the Plano Police Department and the Plano Zoning Department. All claims against these two entities are dismissed with prejudice. Count 9 (obstruction of justice) is also dismissed with prejudice. The status hearing of October 5, 2017 will remain in place to discuss a deadline for a potential amended complaint, if Mitchell wants to try pursuing the case. The Court notes that Defendant Susan Nelson left a voicemail on the chambers voicemail system, stating that Mitchell has been arrested and detained in a county jail. No

change of address form has been filed, so the Court will await word from Mitchell herself.

ENTERED:

_____s/Edmond E. Chang_____
Honorable Edmond E. Chang
United States District Judge

DATE: September 29, 2017