UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SHARON MITCHELL, | ) | |
| | ) | |
| Plaintiff, | ) | No. 16-cv-07227 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| CITY OF PLANO, CITY OF YORKVILLE, | ) | |
| KENDALL COUNTY SHERIFF'S OFFICE, | ) | |
| JOHN BEERY, ROBERT HERNANDEZ, | ) | |
| EMILY ANDERSON, ANTHONY | ) | |
| JOURTAS, SHAWN BARKS, | ) | |
| AARON SMITH, JONATHAN WHOWELL, | ) | |
| SCOTT HOGAN, TOM ROMANO, TRISH | ) | |
| HUTSON, SUSAN NELSON, UNKNOWN | ) | |
| KENDALL COUNTY SHERIFF OFFICE | ) | |
| EMPLOYEES, UNKNOWN KENDALL | ) | |
| COUNTY COURT SHERIFF OFFICE | ) | |
| EMPLOYEES, UNKNOWN | ) | |
| INDIVIDUALS TO BE NAMED | ) | |
| THROUGH DISCOVERY, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Sharon Mitchell accuses various Plano and Kendall County officials, plus two of her neighbors, of engaging in a years-long conspiracy to harass her. *See generally* R. 68, Second Am. Compl. The Court dismissed the previous version of Mitchell's already-amended complaint for failure to state a claim, noting, among other issues, persistent group-pleading problems and lack of clarity about which defendants did what. R. 55, 9/29/17 Opinion. But in light of Mitchell's *pro se* status and the general preference for resolving claims on the merits, the Court allowed Mitchell to file a Second Amended Complaint. *See id.* at 2. And so Mitchell filed the current version of

the complaint, which added factual detail to some of her claims (and also attempted to raise some new claims against new defendants). *See generally* Second Am. Compl. The Plano Defendants and Defendants Hutson and Nelson separately moved to dismiss the latest version of Mitchell's complaint, arguing that it suffers from the same defects as the previous version. R. 71, Hutson Mot. Dismiss; R. 77, Plano Mot. Dismiss; R. 92, Nelson Mot. Dismiss. For the reasons stated below, the claims are dismissed except for certain very limited claims against Defendants Hutson, Jourtas, and Smith.

## I. Background

According to Mitchell, the events of this case kicked off in 2009, when Mitchell's son was falsely arrested by Plano Police Officer Robert Hernandez. Second Am. Compl. ¶ 20. Mitchell complained about her son's arrest to a series of Plano and Kendall County officials. *Id.* ¶¶ 7-21. In response to her complaints, Mitchell asserts that the City of Plano and the Plano Police Department (eventually joined by Mitchell's neighbors, Trish Hutson and Susan Nelson, and various Kendall County officials) carried out an "oppressive and relentless" campaign of retaliation against her, including staking out her home, invading her vehicle, threatening her, and seizing her dog. *Id.* ¶¶ 9, 11. Mitchell avers, on information and belief, that "[a]ll Defendants conspired and encourage each other" to carry out the harassment. *Id.* ¶ 10.

## A. Encounters with Plano Police Officers

One example of the alleged harassment occurred in Spring 2010, when Officer Emily Anderson came to Mitchell's home, apparently in response to a complaint that Mitchell's dog was off leash.[1] Second Am. Compl. ¶ 26. The next day, Anderson returned with two other armed officers and unsuccessfully tried to enter Mitchell's yard. *Id*. Three weeks later, Anderson charged Mitchell with "RESIST/PC OFF/COR EMP/FRFTR" (it is not clear what that means, but probably it is a charge for resisting arrest). *See id*. Mitchell was found not guilty in a bench trial. *Id*. Mitchell alleges that Anderson did not have probable cause to issue the citation because Mitchell was not violating any law. *Id*.

Mitchell clashed again with the Plano police in Fall 2015. She alleges that Plano Police Officer Anthony Jourtas (allegedly at the direction of Officer Shawn Barks) issued Mitchell a citation for expired tags on a vehicle that did not belong to Mitchell. *Id*. ¶ 44. Worse, Mitchell says that the tags on the vehicle were not even expired: Jourtas issued the citation in 2015, but the citation states that the tags expired in 2016. *Id*. Mitchell went to a hearing on the citation and was found liable, despite presenting evidence that she was not the owner of the vehicle. *Id*.

Mitchell had another run-in with Jourtas in Fall 2015. Mitchell avers that Jourtas entered her unlocked parked vehicle and searched it. Second Am. Compl. ¶ 45. Jourtas did not have permission to search the vehicle. *Id*.

---

[1]The complaint actually reads: "Officer Anderson, came to Plaintiffs home allegation Plaintiffs dog was off leash."

In Spring 2016, Defendant Officer Barks responded to a call about Mitchell's dogs. *Id.* ¶ 52. Barks asked the complaining individual whether she wanted to sign a form and "have [Mitchell] trespassed" because Mitchell "trespassed from Waubonsee and several locations in Plano." *Id.* Mitchell claims that this statement was "a blatant lie because [Barks] knows [Mitchell] does not have a trespass notice in any location in Plano." *Id.* But Mitchell does not allege that she was arrested or issued a citation in connection with this incident. *See id.*

In October 2017, Mitchell called the police because another dog attacked her dog. *Id.* ¶ 40. An unidentified Plano police officer arrived and told Mitchell that she could not walk her dog in that field, and if she did, then she would be arrested. *Id.* Mitchell alleges that the owner of the dog that attacked her dog did not own that field. *Id.*

### B. Conflicts with Hutson and Nelson

Mitchell has also been involved in long-running feuds with two of her neighbors, Susan Nelson and Trish Hutson. *See, e.g.,* Second Am. Compl. ¶¶ 24, 34, 38. Mitchell attributes these conflicts to the wide-ranging conspiracy against her. *Id.* ¶ 11. The allegations about the conflicts with Nelson and Hutson are numerous and difficult to understand, but the Court will do its best to pick out the individual incidents.

### 1. Hutson

Mitchell alleges that in Spring 2015, Hutson called 911 and falsely claimed that Mitchell's dog was loose,[2] that Mitchell was not at home, and the Mitchell "was not someone you can 'deal' with." Second Am. Compl. ¶ 28. In response, Plano Police Officer John Berry[3] and another officer responded. *Id.* Mitchell was upset, and the other officer tried to calm her down. *Id.* Mitchell does not allege that she was prosecuted or arrested. *Id.*

On another occasion, Hutson "seized" Mitchell's dog and called 911. *Id.* ¶ 30. When Officer Berry showed up, Hutson falsely claimed that she did not know the owner of the dog and that it had run into Hutson's house when Hutson let her dogs out. *Id.* When Mitchell saw the police pull up in front of Hutson's house, she retrieved her dog. *Id.* Berry issued Mitchell a citation for having an off-leash dog. *Id.* Mitchell attended a hearing and was found not liable. *Id.* Mitchell claims that Berry did not have probable cause to issue the citation. *Id.*

At some other time (the complaint is not clear about when), a different Plano officer, Officer Hogan, issued Mitchell a citation. *Id.* ¶ 31. The citation apparently had something to do with Mitchell's dog, but the complaint does not make clear what the underlying offense was. *See id.* Mitchell was found not liable on the citation. *Id.*

---

[2] The actual allegation says that Hutson told the dispatcher that "Plaintiff dog was sitting in front of Plaintiff," but that appears to be a mistake or typo. The Court infers from the context that the actual complaint was that Mitchell's dog was loose near Hutson.

[3] Berry is sometimes referred to as "Beery" in the Second Amended Complaint. *See, e.g.,* Second Am. Compl. ¶ 1.

As Mitchell was leaving the hearing, she saw Hutson talking to Hogan. *Id*. Mitchell asserts that Hogan did not have probable cause to issue the citation. *Id*.

In September 2015, Mitchell tried to get an emergency order of protection against Hutson. Second Am. Compl. ¶ 32. Officer Barks served as a witness on Hutson's behalf and allegedly gave false testimony. *Id*. The only false statement Mitchell reports is that "on previous occasions [Mitchell] has not answered her door when the police knocked." *Id*. It is not clear what relevance this statement had to the order of protection hearing. Hutson then filed for her own emergency order of protection, which was granted. *Id*. ¶ 33. According to Mitchell, Barks gave the same false testimony about Mitchell not answering her door when the police knocked. *Id*. Hutson eventually obtained a plenary order of protection against Mitchell. *Id*. ¶ 35.

The conflicts between Mitchell and Hutson continued despite the order of protection. Mitchell alleges that since August 2017, Hutson has enlisted the help of the Plano Police Department to have Mitchell arrested five times. *Id*. ¶ 37. The complaint describes only two of these incidents in any detail. First, around September 2017, Hutson alleged that Mitchell had trespassed on her property in violation of the order of protection. *Id*. ¶ 36. Hutson and Plano Officer Aaron Smith both submitted sworn affidavits falsely stating that there was a No Trespass sign visible in Hutson's window. *Id*. Based on the affidavits, Smith obtained an arrest warrant for Mitchell. *Id*. Mitchell was arrested and released only after posting bond. *Id*. Once again, Mitchell asserts that there was no probable cause to arrest her because she was not violating any law. *Id*.

Second, also in September 2017, Mitchell contacted the Plano Police to complain about a neighbor's dog jumping over her fence and attacking her dogs. *Id.* ¶ 41. Officer Barks responded to the call. *Id.* Even though Hutson had no reason to be involved in this incident, Mitchell saw Barks go into Hutson's home. *Id.* ¶ 42. After speaking with Hutson, Barks informed Mitchell that an arrest warrant was going to be issued for her, but that he did not know the charge. *Id.* ¶ 42. An arrest warrant was issued, allegedly based on Hutson's statements (though Mitchell does not say what statements those were). *Id.*

In addition to those concrete incidents, Mitchell alleges that Hutson has generally harassed her since 2013. The harassment included seizing Mitchell's dog, calling 911 on Mitchell with unsubstantiated claims or "blatant lies," physically fighting with Mitchell, and installing a surveillance system at Hutson's home that allows Hutson to surveille Mitchell. *Id.* ¶¶ 72-73.

### 2. Nelson

Mitchell has also continually clashed with Defendant Susan Nelson. In 2015, Nelson filed for an emergency order of protection against Mitchell (allegedly) based on false statements about incidents that never occurred. Second Am. Compl. ¶ 34. Barks appeared as a witness and gave the same false testimony as he did in the Mitchell/Hutson order of protection hearings: that Mitchell had sometimes failed to answer her door when the police knocked. *Id.* The order of protection was granted. *Id.*

Beginning in Fall 2015, Nelson repeatedly alleged that Mitchell had trespassed on her land, violated the order of protection, and threatened her. *Id.* ¶ 38. Based on these allegations—which, according to Mitchell, were false—Mitchell was arrested four times. *Id.* On one of these occasions, Officer Smith was the responding officer. Smith signed an affidavit stating that, based on his observation, Mitchell had *not* violated the order of protection. *Id.* Smith took the affidavit to the Kendall County Sheriff's Office. *Id.* Inexplicably, an arrest warrant was issued and Mitchell was arrested and imprisoned. *Id.*

In November 2017, Nelson was following Mitchell as she left her home. Shortly after that, Mitchell was stopped by a Kendall County Sheriff's Officer, even though she was not violating any laws at the time. *Id.* ¶ 53. The officer asked Mitchell about her reasons for visiting the locations Mitchell had just left. *Id.*

As with Hutson, Mitchell alleges that Nelson continually harassed her, but does not provide many details. Mitchell does allege, however, that Nelson conspired with Hutson and Plano employees to "harass, stalk, surveille, and intimidate" Mitchell. *Id.* ¶ 74. Some of this harassment involved Nelson stopping her car in front of Mitchell's home. *Id.*

**C. Kendall County Courthouse, State's Attorney, and Sheriff's Office**

In addition to expanding her claims against the defendants in the previous complaint, Mitchell has added a number of new allegations about unpleasant experiences with various Kendall County employees, including individuals associated with the Sheriff's Office, the Kendall County State's Attorney, and the Kendall

County Court. As will be discussed below, many of these defendants were not served, and the allegations against the remaining defendants are too vague to state a claim, so there is no need to relate the allegations against the Kendall County defendants in detail here.

## II. Motion to Dismiss Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (internal quotation marks and citation omitted). The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the

assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678-79.

## III. Analysis

### A. Improper Defendants

### 1. Kendall County Defendants

Mitchell's Second Amended Complaint names a number of new defendants, including the City of Yorkville, the "Kendall County Sheriff[']s Office," "Unknown Kendall County Sheriff['s] Office Employees," and "Unknown Kendall County Court Employees." Second Am. Compl. at p. 1. As far as the record shows, Mitchell has made no effort to serve the Kendall County Sheriff's Office or the City of Yorkville. The time limit for service has long passed (the Second Amended Complaint was filed eight months ago), and Mitchell has shown no good cause for her failure to effect timely service. *See* Fed. R. Civ. P. 4(m). Nor will the Court issue a permissive extension of time to serve. *See Coleman v. Milwaukee Bd. of Sch. Directors*, 290 F.3d 932, 934 (7th Cir. 2002). Mitchell encountered service-of-process issues when she filed her original complaint, and at that point the Court instructed her on how to use the Marshals Service to serve the defendants. R. 23, 09/14/16 Minute Entry. So it is clear that Mitchell is aware of the importance of effectuating proper service of process, and was told how she could complete service. She nevertheless completely neglected to serve the new parties to the Second Amended Complaint. Any claims against the Kendall County Sheriff's Office and the City of Yorkville are dismissed for improper service.

In addition to Mitchell's attempt to add the Kendall County Sheriff's Office and City of Yorkville as defendants, a number of Mitchell's allegations relate to supposed misconduct by the Kendall County State's Attorney or its employees. *Id*. ¶¶ 36-39, 46. Mitchell lists the Kendall County State's Attorney as a defendant in her complaint, but has not added the State's Attorney it to the list of defendants in the caption. That might not be dispositive, but in any event, Mitchell's claims against the State's Attorney still must be dismissed for improper service. As with the Sheriff's Office and the City of Yorkville, Mitchell has made no attempt to serve the Kendall County State's Attorney (or Kendall County itself, the proper defendant), and the time for service has come and gone.

As for the unknown defendants affiliated with the Kendall County Sheriff's Office and the Kendall County Court, Mitchell has not stated a viable claim for relief. The allegations are simply too vague to give any potential defendants notice of what conduct Mitchell is complaining of. It is unclear what the unknown Kendall County Sheriff's Office employees are alleged to have done to Mitchell. Mitchell *does* allege that a Kendall County Sheriff's Officer named Kramer stopped Mitchell's vehicle, but Kramer is not named as a defendant, and clearly does not fall into the category of "*Unknown* Kendall County Sheriff['s] Office Employees" named in the caption. *See id*. ¶ 53, p. 1 (emphasis added). And even if Mitchell is trying to name Kramer as a defendant, *see id*. ¶ 16, Kramer has not been served. Apart from the incident with Kramer, Mitchell has not identified any misconduct by specific, identifiable Kendall County Sheriff's Office employees. Conclusory allegations that all defendants

engaged in a vast conspiracy against Mitchell, *see, e.g., id.* ¶¶ 11, 57-61, 111 are too implausible to state a claim upon which relief can be granted.

Mitchell's claim against the "Unknown Kendall County Court Employees" falls short for the same reasons. It is simply not clear from the complaint which Kendall County Court employees allegedly wronged Mitchell or how. To the extent that Mitchell is complaining about adverse rulings by Kendall County judges or unfair case management by those judges, *see id.* ¶¶ 46, 48-51, those claims are barred by *Rooker-Feldman* or judicial immunity.[4] *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Richman v. Sheahan*, 270 F.3d 430, 434 (7th Cir. 2001) ("[J]udges are entitled to absolute immunity from damages for their judicial conduct.")

## 2. Romano and Whowell

Mitchell names Jonathan Whowell, a Plano police officer, and Tom Romano, an employee of the Plano Department of Zoning and Enforcement, as defendants. *See* Compl. at p. 1; R. 78, Plano Defs.' Br. at 2. But the Second Amended Complaint does not contain any allegations about any actions by either Whowell or Romano. The conclusory allegation that "All Defendants" conspired to engage in harassment against Mitchell, *see* Second Am. Compl. ¶ 10, is not enough to state a claim against Romano and Whowell. *See, e.g.*, *Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009)

---

[4]There is also a confusing allegation about certain Kendall County judges refusing to accommodate a medical condition that allegedly makes Mitchell's eyes sensitive to light. *See id.* ¶ 50. This allegation is so confusingly pled that it is not even clear what happened. But in any event, Mitchell does not appear to be advancing any kind of disability discrimination claim, so she has no potential claim based on that allegation.

(dismissing claims where the complaint was "bereft of any suggestion, beyond a bare conclusion" that defendants were engaged in a conspiracy). The claims against those two defendants are dismissed.

### 3. City of Plano

Mitchell's claims against the City of Plano under 42 U.S.C. § 1983 also fall short of stating a valid claim. A municipality is only liable under Section 1983 if the unconstitutional act complained of is caused by (1) an official policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority. *Thomas v. Cook Cty. Sheriff's Dept.*, 604 F.3d 293, 303 (7th Cir. 2010) (citing *Monell v. Dept. of Social Services of New York*, 436 U.S. 658, 690 (1978)). In this case, Mitchell has pleaded no *facts* to support a *Monell* theory of liability against the City of Plano. Although she alleges that the "Defendants" have a "custom and policy" of "retaliat[ing] against and intimidat[ing] persons who exercise speech in a manner critical of Plano," that just states the legal conclusion. *See* Second Am. Compl. ¶ 57. Similarly, her allegation that the supposed policy of retaliation "was made by the policy making authority within Plano" (without saying who the final policymaker is or what he or she actually did), *id.* ¶ 58, is not a well-pled *factual* allegation that could support municipal liability.

Nor do the various incidents described in the Second Amended Complaint plausibly give rise to an inference that the violations Mitchell alleged were caused by an official policy or practice. Mitchell's factual allegations boil down a series of

sporadic and disjointed contacts with different law enforcement officers, private citizens, and municipal entities over a period of almost a decade. These incidents do not *plausibly* suggest that Plano had an official policy or practice that harmed Mitchell. So the constitutional claims against the City of Plano are (again) dismissed.

## B. Freedom of Speech (Count 1)

Moving on to Mitchell's theories of liability, Mitchell's first constitutional claim is that *all* the defendants conspired to retaliate against her for her criticism of the Plano Police Department's handling of her son's arrest in 2009. *See* Second Am. Compl. ¶¶ 7-10. As discussed in the Opinion dismissing the First Amended Complaint, that is simply not plausible. *See* 09/29/17 Opinion at 21-22. Mitchell alleged that her son was arrested in 2009, and then points to only one concrete incident of supposed harassment—the run-in with Anderson in 2010—between 2009 and 2015. *See id.* at ¶¶ 26-27. It is not reasonable to infer that Hutson, Nelson, and a host of different Plano police officers (none of whom is alleged to have been involved in the 2009 arrest) were conspiring *in 2015* to retaliate against Mitchell for her complaints six years earlier. Nor is there even a plausible inference that the 2010 incident with Anderson was retaliatory: Mitchell does not allege that Anderson was involved in the 2009 arrest, or that Anderson even knew about Mitchell's complaints to Plano officials. *See id.* ¶¶ 20-26. So Mitchell's First Amendment claim fails.

## C. Equal Protection (Count 2)

Mitchell's class-of-one equal protection claim is similarly implausible. It is true that the Seventh Circuit recognizes a cause of action based on "deliberate and

unjustified official harassment." *Cameron v. City of Chi.*, 2017 WL 3421474, at \*4 (citing *Geinosky v. City of Chi.*, 675 F.3d 743, 745 (7th Cir. 2012)). But none of the factual allegations in the Second Amended Complaint suggest that Mitchell was subjected to intentional discrimination lacking a rational basis, or that Mitchell was a "victim of discrimination intentionally visited on [her] by state actors who knew or should have known that they had no justification … for singling [her] out for unfavorable treatment." *See Cameron*, 2017 WL 3421474, at \*4 (citing *Del Marcelle v. Brown Cty. Corp.*, 680 F.3d 887, 889, 913 (7th Cir. 2012) (separate *en banc* opinions)). All Mitchell plausibly alleges is a series of sporadic encounters with various law enforcement officials from different offices over a period of years. And even the more recent allegations (that is, the incidents dating from 2015 or later) do not suggest the kind of unfair targeting that characterizes a class-of-one claim. Mitchell's disjointed encounters with different officers from different police departments over a period of two or three years do not plausibly suggest intentional discrimination, especially in light of the broad range of police discretion.

### D. Due Process (Count 3)

Mitchell's next theory is that the Defendants violated her right to due process of law under the Fourteenth Amendment. At the outset, it is not entirely clear what actions Mitchell believes deprived her of due process. Some of her "due process" arguments appear to be different constitutional claims reframed as due process arguments. For example, in her section on due process, Mitchell alleges that "Defendant behavior is not related to any legitimate state objective … None of Defendants' fellow citizens have been subjected to the type of contact engaged in by

15

Defendants and directed against Plaintiff." Second Am. Compl. ¶¶ 97-98. That looks like an attempt to state a class-of-one equal protection claim. Similarly, Mitchell alleges that her due process rights were violated by the Defendants' "custom and policy of attempting to silence citizens." *Id.* ¶ 101. That is just another way of framing Mitchell's First Amendment retaliation claim. To the extent that Mitchell is attempting to state other constitutional claims under some kind of substantive due process theory, the Court must analyze that claim under the framework for the more *specific* constitutional provision. *Hurt v. Wise*, 880 F.3d 831, 844 (7th Cir. 2018); *City of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998). The Court has explained why the First Amendment and Equal Protection claims fail, so any supposed due process claim based on those theories also fails.

Mitchell also asserts generally that she "has not been afforded her right to procedural or substantive due process by Defendants." Second Am. Compl. ¶ 100. Here again, Mitchell's theory of liability is far from clear, but again the claims must fail. Although *evidence* fabrication can lead to a due process claim, *Saunders-El v. Rohde*, 778 F.3d 556, 560-61 (7th Cir. 2015), Mitchell once again appears to be alleging that the various Defendants fabricated *testimony*, not evidence. *See, e.g.*, Second Am. Compl. ¶¶ 33-35. As the Court noted in dismissing Mitchell's last attempt at stating a due process claim, witness testimony is absolutely immune from civil liability. *House v. Belford*, 956 F.2d 711, 720-21 (7th Cir. 1992). That immunity extends to other forms of testimony, including affidavits, and even prevents liability for conspiracy to submit false testimony. *Kowalski v. Boliker*, 893 F.3d 987, 1000 (7th

Cir. 2018). So if Mitchell is attempting to state a due process claim based on fabricated evidence, she has not succeeded.

As for Mitchell's various complaints about false arrest or malicious prosecution, those are not actionable under the due process clause. The Fourth Amendment is the proper vehicle for challenging the constitutionality of an arrest. *Alexander v. McKinney*, 692 F.3d 553, 558 (7th Cir. 2012). And malicious prosecution claims cannot be brought under the due process clause if the relevant state law provides for a remedy, as Illinois law does. *Ray v. City of Chi.*, 629 F.3d 660, 664 (7th Cir. 2011). In short, Mitchell's attempt at stating a due process claim fails.

### E. Unreasonable Search and False Arrest (Counts 4 and 8)

Next up is Mitchell's claim that Jourtas executed an unreasonable search of her car in violation of the Fourth Amendment. Mitchell alleges that, in Fall 2015, Jourtas entered Mitchell's parked vehicle, which was unlocked. Second Am. Compl. ¶ 45. Jourtas opened the passenger-side door and began to search the vehicle. *Id.* Jourtas did not have permission to conduct the search. *Id.* Jourtas presumably did not have a warrant, though the complaint says nothing about that. Warrantless searches are per se unreasonable subject to some defined exceptions. *See Neita v. City of Chi.*, 830 F.3d 494, 498 (7th Cir. 2016). At this stage, the facts do not suggest that any of those exceptions apply—there is no suggestion that Jourtas reasonably believed that the car contained contraband, for example. *See Pennsylvania v. Labron*,

518 U.S. 938, 940 (1996). So Mitchell has pled the bare-bones facts necessary to state an unlawful search claim against Jourtas.[5]

Mitchell also has successfully alleged a false arrest claim, premised both on the Fourth Amendment and Illinois common law, based on her September 2017 arrest for trespassing. *See* Second Am. Compl. ¶ 36. Mitchell alleges that Hutson falsely reported to the Plano Police Department that Mitchell had trespassed on Hutson's property in violation of Hutson's Order of Protection against Mitchell. *Id*. Hutson and Plano Police Officer Smith then submitted sworn affidavits telling the same alleged lie—that there was a "No Trespass" sign clearly visible in Hutson's window. *Id*. Mitchell was arrested based on those affidavits. *Id*. Mitchell alleges that there was no probable cause to arrest her because she was not in violation of any law. *Id*.

That is enough to state a claim for false arrest against Hutson and Smith, under both the Fourth Amendment and Illinois common law. *See Meerbrey v. Marshall Field and Co., Inc.*, 564 N.E.2d 1222, 1231 (Ill. 1990); *Neita*, 830 F.3d at 497. Mitchell has alleged that Hutson caused her to be arrested, knowing that her trespassing claim was false (and consequently that there was no probable cause to arrest Mitchell), and that Smith also knew that there was no probable cause to arrest her. The allegation about Smith's lack of probable cause is somewhat conclusory, but Mitchell does allege that she did not violate any law, and Smith's false statement in

---

[5]Mitchell labels her Fourth Amendment Claim "Deprivation of Constitutional Right of Freedom from Seizure of Their Bodily Person," Second Am. Compl. at ¶¶ 103-104, which suggests an unlawful arrest claim, not an unlawful search claim. But Mitchell is *pro se*, and she has pled the *facts* necessary to state an unlawful search claim, so the Court will not penalize her for the labeling of the Fourth Amendment claim.

his affidavit about the "No Trespassing" sign suggests that Smith knew that the arrest was not on the up-and-up. Perhaps the facts uncovered in discovery will reveal that there was probable cause, but the allegations must be accepted as true at this stage.

Also, the fact (or, at least, the alleged fact) that Smith and Hutson told the same lie about the "No Trespassing" sign has another consequence: it gives rise to a fair inference that Smith and Hutson conspired to arrest Mitchell without probable cause.[6] The lie that Hutson and Smith allegedly told links their behavior and makes Mitchell's conspiracy allegation plausible with respect to Hutson and Smith's conduct related to this arrest. When a private citizen conspires with a state actor to deprive a person of her constitutional rights, the private citizen becomes a state actor for purposes of 42 U.S.C. § 1983. *Hallinan*, 570 F.3d at 815. Here, there is a reasonable inference that Hutson conspired with Smith to deprive Mitchell of her constitutional rights, so Hutson can be liable for the Fourth Amendment violation under 42 U.S.C. § 1983.

The rest of Mitchell's allegations, however, do not state claims for false arrest or false imprisonment. Mitchell says that, in Fall 2015, Nelson falsely alleged that Mitchell "Trespassed on her Land, violated an Order of Protection, and [ ] threatened her." Second Am. Compl. ¶ 38. Mitchell asserts that she was imprisoned four times based on these allegations, but does not describe the circumstances of those

---

[6]The importance of the No Trespassing sign is *not* that a sign saying those words is a precondition for bringing a charge of trespass, but that supposedly both Hutson and Smith lied about whether Hutson displayed the sign.

imprisonments or the underlying arrests. *Id*. That kind of general pleading is too vague to state a viable claim. Mitchell does describe one of the arrests in more detail, but even that incident does not give rise to a claim for relief. Mitchell alleges that Officer Smith responded to Nelson's complaint and signed an affidavit stating that, based on his observation, Mitchell was *not* in violation of the order of protection. *Id*. Smith took his affidavit to the Kendall County State's Attorney. For some reason—despite Smith's affidavit attesting that Mitchell had not violated the order of protection—Mitchell was arrested anyway. *Id*. That allegation is bizarre and confusing, and it is difficult to know how to read it. But at the very least, Mitchell does not plausibly connect the Kendall County State's Attorney's decision to arrest her with Nelson's false statements (or, for that matter, with Smith's affidavit). So Mitchell's false arrest claims against Nelson based on the Fall 2015 allegations fall short.

Mitchell describes another strange incident in September 2017 where she called the police to report that a neighbor's pit bull was attacking her dogs. Second Am. Compl. ¶ 41. Officer Barks reported to the scene. *Id*. At some point (it is not clear when), Barks went into Hutson's home and spoke to Hutson, even though Hutson was not involved in the incident. *Id*. ¶ 42. Barks left the house and told Mitchell that she was going to be arrested soon, but that he did not know the charges because he just started his shift. *Id*. Soon after that, Mitchell says she was arrested "based on the false allegations of Defendant, Hutson." *Id*. But that set of allegations is missing crucial facts to state a claim against either Barks or Hutson. Per Mitchell's own

allegations, Barks was not the person who arrested her, and was not even the officer who made the decision to arrest her. As for Hutson, although Mitchell states that Hutson's "false allegations" led to her arrest, that just repeats the legal *elements* for a state law false arrest claim. There are no *facts* about what Hutson's false statements were and why Mitchell was arrested—only the legal conclusion that Hutson caused Mitchell's false arrest. That is not sufficient even under the liberal Rule 8 notice-pleading regime.

Mitchell also tries to bring a claim based on her son's arrest in 2009. *See* Second Am. Compl. ¶¶ 7, 11, 20. As the Court noted in its opinion dismissing the claim the first time around, that claim is clearly time-barred. *See* 09/29/17 Opinion at 12-13. Although a plaintiff does not need to plead around the statute of limitations, *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009), Mitchell's own allegations make it clear that the statute of limitations has run. *See* 09/29/17 Opinion at 12-13. What's more, as the Court also noted, there is no reason to think that Mitchell has standing to complain of the injury to her son (and Mitchell has not alleged any facts this time around that change that conclusion). *Id*. Even if the claim arising from Mitchell's son's arrest was not time-barred, Mitchell would not have standing to bring it.

Finally, Mitchell's various allegations of "multiple false arrests" and "imprisonments" and "seizure of [her] dog," *see* Second Am. Compl. ¶¶ 9, 10, 91, lack the factual foundation to pass muster under Rule 12(b)(6). Mitchell does not even say when those arrests took place or who was involved, let alone plausibly allege a lack of probable cause. So Mitchell's false arrest claim (premised both on the Fourth

Amendment and Illinois common law) is limited to the trespassing arrest caused by Hutson and Smith in September 2017.

### F. False Light and Defamation (Counts 5 and 6)

Next up are Mitchell's claims of false light invasion of privacy and defamation, both premised on Illinois common law. Here Mitchell runs into the same problems as she did in the previous iteration of her complaint: causation and privilege.

As a starting point, defamation and false light both require publication of false information. *Goral v. Kulys*, 21 N.E.3d 64, 76 (Ill. App. Ct. 2014); *Kapotas v. Better Government Ass'n*, 30 N.E.3d 572, 595 (Ill. App. Ct. 2015). Mitchell's core theory appears to be that the defendants defamed her or placed her in a false light by arresting her, knowing that news of the arrests might appear in the newspapers. Second Am. Compl. ¶¶ 54, 114, 120. But Mitchell does not allege that any defendant actually *caused* the newspapers to publish the information about Mitchell (if the information was even false). Mitchell also argues that Defendants' *actions* of staking out her house, arresting her, and following her put Mitchell in a false light before the public. Id. ¶¶ 114, 117. Even assuming that these actions could be the basis of a defamation or false like claim (the Court is very skeptical that that is the case, because false light and defamation have to do with false or misleading *communications*), Mitchell has once again failed to identify which Defendants published the false information to what third parties or members of the public. So Mitchell has not alleged that any particular defendant defamed her or placed her in a false light before the public.

Mitchell also makes the very general allegation that unspecified "Defendants" defamed her by "falsely stating in police reports, affidavits, [and] applications for arrest warrants ... that [Mitchell] had committed crimes." *Id.* ¶ 120. These allegations are far too vague and conclusory to put any defendant on notice of what the claims are. With regard to the more concrete incidents described in the body of the Second Amended Complaint, those run up against the publication issue or various common-law privileges: the false statements Mitchell identifies appear to be made either in the context of giving testimony, which is absolutely privileged, or to police officers for the purpose of initiating legal proceedings, which is also privileged. *Morris v. Harvey Cycle and Camper, Inc.*, 911 N.E.2d 1049, 1054-56 (Ill. App. Ct. 2009) (noting that, under Illinois law, reports to police officers are absolutely privileged even when made to intimidate or harass). In the end, Mitchell's defamation and false light claims fall short.[7]

### G. Intentional Infliction of Emotional Distress (Count 7)

Mitchell's next claim is a state law claim for intentional infliction of emotional distress. Under Illinois law, the elements of intentional infliction of emotional distress are that (1) the defendant's conduct was "extreme and outrageous;" (2) the defendant either intended that his conduct inflict severe emotional distress or knew

---

[7]Mitchell attached three "exhibits" to her response brief expanding on her allegations about which statements or incidents purportedly defamed her or placed her in a false light. R. 110, Pl. Resp. Exhs. A-C. The factual allegations in these exhibits are disregarded. It is well settled that a plaintiff may not amend her complaint in her response brief. *Pirelli v. Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011). What's more, the Court has already given Mitchell substantial leeway to amend her complaint and to depart from general restrictions on complaint length and style. Mitchell cannot use her response brief to try to amend her complaint yet again.

that there was at least a high probability that his conduct would cause severe emotional distress; and (3) the defendant's conduct in fact caused severe emotional distress. *Schweihs v. Chase Home Fin., LLC*, 77 N.E.3d 50, 63 (Ill. 2016). The bar for "extreme and outrageous" conduct is high; only conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community" is considered extreme and outrageous. *Id*. (citing Restatement (Second) of Torts § 46 cmt. d Am. Law Inst. 1965)).

Mitchell's allegations, as sweeping as they are, do not plausibly state a claim for intentional infliction of emotional distress. As discussed above, her accusations of a global conspiracy among all the Defendants to harass and intimidate her are just not plausible. Her claims against the individual officers are based on a series of disjointed encounters with various police officers over several years. There is no plausible inference of the kind of behavior that would meet the bar for "extreme and outrageous" conduct.

Mitchell's claims against her neighbors come closer to meeting the standard, but still fail in the end. It is clear that Mitchell does not get along with Hutson and Nelson, and Mitchell has even managed to plausibly allege a couple of claims against Hutson for false arrest and malicious prosecution (as explained in this Opinion). But most of the claims against Nelson and Hutson are entirely vague or conclusory. For example, the allegation that Nelson "began harassing, surveilling Plaintiff, contacting Plaintiff[']s neighbors with false statements and/or 911 with either

unsubstantiated claims and/or blatant lies" does not give even the basic information of when or how often the supposed harassment occurred. *See* Second Am. Compl. ¶ 74. Most of the more concrete allegations—that Nelson drives past Mitchell's house, *see id.*, or that Hutson has surveillance cameras in her own home, *id.* ¶ 72—do not amount to extreme and outrageous conduct. And even the two claims that survive against Hutson do not establish a pattern of conduct "beyond all possible bounds of decency." *See Schweihs*, 77 N.E.3d at 63. Mitchell's intentional infliction of emotional distress claims are dismissed.

### H. Malicious Prosecution (Count 9)

Last up of the substantive claims is Mitchell's state-law malicious prosecution claim, which is actually comprised of many alleged incidents that she thinks amount to malicious prosecution. To state a claim for malicious prosecution under Illinois law, a plaintiff must allege (1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages. *Logan v. Caterpillar, Inc.*, 246 F.3d 912, 921-22 (7th Cir. 2001). Although Mitchell claims that she has been maliciously prosecuted dozens of times, only one of the events described in the Second Amended Complaint gives rise to a plausible claim for malicious prosecution.

Marching through the convoluted allegations in the Second Amended Complaint, the first possible malicious prosecution is the 2010 citation issued by

Anderson for resisting arrest.[8] Second Am. Compl. ¶ 26. But this claim is time-barred. A malicious prosecution claim accrues when the criminal proceeding on which it is based terminates in the plaintiff's favor. *Ferguson v. City of Chi.*, 820 N.E.2d 455, 459 (Ill. 2004). Under the Illinois Local Government and Governmental Employees Tort Immunity Act, 745 ILCS 10/1-101 *et seq.*, claims against local government employees (like Anderson) are subject to a one-year statute of limitations. 745 ILCS 10/8-101(a). Although it is not precisely clear when the bench trial on the resisting arrest citation ended, the structure of Mitchell's complaint makes clear that the trial ended sometime before 2015: the Anderson incident is described in the paragraph immediately preceding the heading "Recent Incidents Beginning 2015-Present." *See* Second Am. Compl. ¶¶ 26-27. Mitchell filed this federal complaint in July 2016, so her claim based on the Anderson citation is barred by the statute of limitations.

The next possible malicious-prosecution claim is the incident described in Paragraph 30 of the Second Amended Complaint. Mitchell alleges that Hutson seized Mitchell's dog and called 911. Second Am. Compl. ¶ 30. When Officer Berry arrived, Hutson told Berry that she did not know who owned the dog and that the dog ran into Hutson's home when Hutson opened the door to let her dogs out.[9] *Id.* Hutson knew

---

[8] The Defendants have not briefed the issue of whether a citation is a "prosecution" for purposes of a malicious prosecution claim. The Court will assume for the purposes of analysis that a "citation" is a prosecution. That is fair because Mitchell is *pro se* and perhaps does not understand the distinction between a citation and other kinds of involvement with the legal system. And indeed, the "citations" that Mitchell describes appear to have led to some fairly involved legal proceedings.

[9] This is not precisely what the complaint says—for example, the actual text says that "Hutson seized Plaintiff doors"—but the Court has done its best to make sense of the allegations.

that what she told Berry was false. *Id.* When Mitchell saw the police car in front of Hutson's house, Mitchell retrieved her dog from Hutson. *Id.* Berry issued a citation to Mitchell for "dog off a leash." Mitchell was found not liable on the citation. *Id.* This series of allegations states a malicious prosecution claim against Hutson. According to Mitchell, Hutson caused a legal proceeding to be instituted against her, knowing that the allegations against Mitchell were false. Malice and lack of probable cause can be inferred from the fact that Hutson stole Mitchell's dog then lied to Berry about how the dog came to be in her house and about not knowing the dog's owner. Mitchell alleges that the proceeding terminated in her favor. So, reading the complaint liberally in the light most favorable to Mitchell, Mitchell has stated a malicious prosecution claim against Hutson.

Mitchell has *not* stated a malicious prosecution claim against Berry, however. Although Mitchell alleges that Berry did not have probable cause to arrest her because she "was not in violation of any law," Mitchell's allegations do not plausibly state that Berry acted with malice or without probable cause. Berry appeared on the scene in response to Hutson's complaint about an off-leash dog. When he arrived, Mitchell's dog was off-leash in Hutson's home. Mitchell then came to the home and admitted that the dog was hers. Mitchell does not allege that Berry knew that Hutson had stolen the dog. On the facts as alleged by Mitchell, Berry had probable cause to issue an off-leash dog citation.

The next possible incident is the citation by Officer Hogan described in Paragraph 31. This allegation does not adequately state a malicious prosecution

claim. Mitchell does not give any information about the circumstances surrounding the issuance of the citation. *See* Second Am. Compl. ¶ 31. Mitchell makes some assertions about things Hutson was told at the hearing on the citation, but those assertions do not illuminate matters (except to imply that the citation had something to do with Mitchell's dog). *Id*. Mitchell saw Hutson talking to Hogan after the citation hearing, but that does not establish that either Hutson instituted the proceeding against Mitchell without probable cause and with malice. *Id*.

The series of allegations about the Orders of Protection granted to Hutson and Nelson against Mitchell likewise do not give rise to viable malicious prosecution claims. Mitchell herself alleges that the Order of Protection proceedings did not terminate in her favor, *see* Second Am. Compl. ¶¶ 33-35, so any malicious prosecution claim arising out of those proceedings fails as a matter of law. The same is true of Mitchell's allegations about the supposedly wrongful citation for expired vehicle tags: Mitchell was found liable on the citation, and thus cannot claim malicious prosecution. *Id*. ¶ 44.

Mitchell's allegations about her September 2017 trespassing arrest also do not state a claim for malicious prosecution. Although Mitchell alleges that Smith and Hutson conspired to arrest her without probable cause, Mitchell does not provide any information about whether the resulting proceeding (if indeed there was any) terminated in her favor.[10] Second Am. Compl. ¶ 36. Mitchell's allegations about her

_____

[10]Mitchell does allege that "Beginning 2009 to current, all civil prosecutions against Plaintiff were dismissed in her favor." Second Am. Compl. ¶ 55. But Mitchell's own

trespassing arrests in Fall 2015 fail for the same reason: Mitchell does not say whether any of the proceedings stemming from the arrests terminated in her favor. *Id.* ¶ 38.

Finally, the incident described in Paragraph 43 also fails to state a malicious prosecution claim. Mitchell avers that a citation was sent to her home regarding a dog off leash. Second Am. Compl. ¶ 43. The name on the citation was not the name of anyone who lived at Mitchell's home. *Id.* Mitchell was found not liable on the citation. *Id.* Although Mitchell successfully alleged that this prosecution terminated in her favor, she has not plausibly alleged that the citation was malicious: sending a citation intended for a different individual to Mitchell's home could just as easily be the result of an administrative mistake. There are no facts from which to infer that the citation was malicious, so this claim fails as well.

To sum up, all of Mitchell's malicious prosecution claims fall short of stating a claim for one reason or another, with the exception of the claim against Hutson based on the events described in Paragraph 30.

### I. Respondeat Superior and Indemnification (Counts 10 and 11)

Mitchell's last two claims are respondeat superior and indemnification claims against the City of Plano. The only remaining claims against Plano employees are the Fourth Amendment unlawful search claim against Jourtas, and the Fourth Amendment and state law false arrest claims against Smith. The indemnification

---

allegations show that it is not true that *every* prosecution dating back to 2009 terminated in her favor. *See, e.g., id.* ¶ 44.

claim survives for now for all the remaining claims against Jourtas and Smith. There is no respondeat superior liability under 42 U.S.C. § 1983, *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 822 (7th Cir. 2009), so the respondeat superior claim survives only for the state law claim against Smith.

### IV. Conclusion

To summarize the results of this Opinion, the remaining claims state a plausible claim for relief and survive dismissal:

- Mitchell's Fourth Amendment unlawful search claim against Jourtas based on the Fall 2015 search of Mitchell's vehicle. *See* Second Am. Compl. ¶ 45.

- Mitchell's Fourth Amendment and state law false arrest claims against Hutson and Smith based on Mitchell's September 2017 trespassing arrest. *See id.* ¶ 36.

- Mitchell's malicious prosecution claim against Hutson for the citation arising from the incident described in Paragraph 30 of the Second Amended Complaint. *See id.* ¶ 30.

- The indemnification claims against the City of Plano based on the surviving claims against Jourtas and Smith.

- The respondeat superior claim against the City of Plano based on the state law false arrest claim against Smith.

All other claims and Defendants are dismissed. The dismissal of all the other claims is with prejudice, because this was Mitchell's third shot at writing a viable complaint after giving her substantial leeway and extensions. The status hearing of August 29, 2018 remains as scheduled on that date (but is reset to 8:30 a.m.) to set an answer deadline and the discovery schedule. To start, disclosures under Federal Rule of Civil Procedure 26(a)(1) must be made by August 28, 2018. Mitchell should immediately start preparing the disclosures and consult with the Pro Se Help Desk if necessary. The Court emphasizes that, after the extensive latitude already given to

Mitchell, she must meet all deadlines going forward and be responsive to request for conferrals from the other side, including on all discovery requests and litigation scheduling. Failure to do so will risk dismissal for lack of prosecution.

ENTERED:

s/Edmond E. Chang

Honorable Edmond E. Chang
United States District Judge

DATE: August 10, 2018