UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SHARON MITCHELL, | ) | |
| | ) | |
| Plaintiff, | ) | No. 1:16-CV-07227 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| The City of Plano, Anthony Joutras, | ) | |
| Aaron Smith, and Trish Hutson, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

In this long-running saga, Sharon Mitchell's *pro se* civil rights lawsuit is down to three core claims against two Plano Police officers and one private citizen. Discovery is done, and all of the Defendants have moved for summary judgment. R. 249, Plano Defs.' Mot. Summary Judgment; R. 252, Hutson Mot. Summary Judgment. As detailed in this Opinion, the Court holds that Mitchell has not raised genuine issues of material fact on any of the claims, and judgment for the Defendants must be entered as a matter of law against all the claims.

**I. Background**

This case has a long history. Sharon Mitchell lives in the City of Plano. R. 255, Defs.' Joint St. Mat. Facts (DSOF), ¶ 4. She filed the initial civil rights complaint in July 2016. R. 1, Original Complaint. That complaint named several of Mitchell's neighbors and several departments of the City of Plano and their employees, alleging a long, conspiratorial course of action including harassment, intimidation, false arrest, and constitutional violations. Original Compl., ¶¶ 5–7. After Mitchell twice

amended the complaint, R. 26, 69, the Defendants filed motions to dismiss. The Court narrowed the case to three core claims: (1) in Fall 2015, Officer Anthony Joutras engaged in an unlawful search under the Fourth Amendment when he searched Mitchell's vehicle; (2) in September 2017, neighbor Trish Hutson and Officer Aaron Smith falsely arrested Mitchell for trespass, in violation of the Fourth Amendment and state law; (3) separately, in around August 2017 Hutson maliciously prosecuted Mitchell for an ordinance citation. R. 119, Mem. Op. and Order on Mots. to Dismiss. In addition to those three core claims, the indemnification claims against the City of Plano remained in the case based on the surviving claims against Officers Joutras and Smith; and a *respondeat superior* claim against Plano also remained in the case based on the state law false arrest claim against Officer Smith. *Id.*

Moving on to the underlying facts, in deciding summary judgment motions, the Court views the evidence in the light most favorable to the non-moving party, here Mitchell. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Having said that, Mitchell conceded the facts offered by the Defendants because she entirely failed to comply with Local Rule 56.1(b)(3). That rule requires non-movants to file a response to the moving party's statement of material facts, containing "numbered paragraphs, each corresponding to and stating a concise summary of the paragraph to which it is directed"; "a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon"; and "a statement, consisting of short numbered paragraphs, of any additional facts that

require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon." Local R. 56.1(b)(3). Mitchell did not do any of that.

As a *pro se* litigant, Mitchell could of course be forgiven for minor problems in any Local Rule 56.1 statement of facts. But to skip the filing entirely is another matter. The Defendants complied with the notice requirement of Local Rule 56.2, and served Mitchell with a notice describing how to file her Local Rule 56.1 response. R. 251; R. 254. So the Court will adopt the Defendants' joint statement of facts—although the Court still draws all reasonable inferences in favor of Mitchell.

As narrowed after the final motion to dismiss, this case concerns two separate instances of alleged violations of Mitchell's constitutional rights. The first, a search of Mitchell's vehicle, occurred on November 6, 2015. DSOF at 2. The second is a course of events beginning on July 6, 2017, DSOF ¶ 49, and culminating in Mitchell's arrest in September 2017. *See* R. 259, Pl.'s Resp. to Hutson's Mot. Summary Judgment, ¶ 2.

### A. November 2015 Car Search

On November 6, 2015, Plano Officer Anthony Joutras was advised by officers who had worked on the prior shift that a black Mercedes ML500 was parked at 3105 Hoffman Street, but was displaying license plates that were not registered to that vehicle.[1] DSOF ¶¶ 8–9. Joutras arrived at the location, in front of Mitchell's home, around 1 p.m. *Id.* ¶ 10. He saw that the car's license plate was not displaying the

---

[1] Throughout the litigation, Officer Joutras' last name has sometimes been spelled "Jourtas" by the parties, as well as by the Opinion deciding the second motion to dismiss, R. 119. But in his declaration submitted with the Plano Defendants' summary judgment motion, R. 255-7, he spells his last name "Joutras." The Court regrets the misspellings.

3

required registration sticker, and after running a search on the plate number, determined that the plates were registered to a 2004 Dodge Utility belonging to a Cherie M. Collins. *Id.* ¶¶ 12–13. Joutras then approached the car, and could see the VIN through the front window. *Id.* ¶ 14. He then called his supervisor, who told him that the vehicle could be towed given that it was displaying false registration while parked on a public roadway. *Id.* ¶ 15. Joutras then ran the VIN, and determined that the last registered owner of the Mercedes was a Brian Ford, with an address in Naperville, Illinois. *Id.* ¶ 16. Joutras knocked on the door of Mitchell's home to attempt to contact the owner or driver of the vehicle; no one answered. *Id.* ¶ 17. He then returned to his squad car and requested a tow truck. *Id.* ¶ 18. The Plano Police Department's Vehicle Inventory Policy requires an inventory search of all vehicles towed or impounded pursuant to police action. R. 255-8, Plano Police Vehicle Inventory Policy. In preparing for the inventory search, Joutras first went to the Mercedes and found that it was unlocked. DSOF ¶ 19. He then turned on his squad camera to document the search. *Id.* ¶ 20. Finally, he again knocked on Mitchell's door before beginning the search, but again, no one answered. *Id.* ¶ 21.

Officer Joutras then began the inventory search. DSOF, ¶ 22. While the search was in progress, Mitchell came outside and asked Joutras why he was in her car. *Id.* ¶ 25. She locked the car with her keys. *Id.* Joutras explained that he was performing an inventory search in advance of towing the vehicle for false registration. *Id.* ¶ 26. Mitchell and Joutras then engaged in a back-and-forth about why Joutras was searching the car, whether he had a warrant to do so, and who Cherie Collins and

4

Brian Ford were. *Id.* ¶¶ 27–31. During this conversation, Joutras called for his supervisor, Sergeant Barks, to assist him at the scene. *Id.* ¶ 30. When Sergeant Barks arrived, Mitchell explained to the sergeant that she had recently purchased the vehicle, that she had switched the license plates from her former car, the Dodge, and that Cherie Collins was her daughter. *Id.* ¶ 33. Mitchell then showed Sergeant Barks title paperwork, and eventually was able to make a phone call to inquire into the status of the vehicle's registration. *Id.* ¶¶ 35–36. Barks then told the towing company, which had by now arrived, and Joutras that he would allow Mitchell to move the car into her driveway, though Barks warned her that the car could not remain in the street without a valid registration sticker. *Id.* ¶¶ 34, 37. Joutras then issued Mitchell a citation for not having a registration sticker. *Id.* ¶ 38.

### B. 2017 Arrest

The events of Summer and Fall 2017 appear to be part of a long history of strife between Mitchell and several neighbors. Defendant Trish Hutson obtained a Stalking No Contact Order in the Kendall County Circuit Court against Mitchell in late 2015 or early 2016; that order provided that Mitchell had to stay at least 100 feet away from Hutson and from Hutson's home from January 7, 2016, to January 7, 2018. DSOF ¶¶ 43–44. The restraining order was served on Mitchell in January 2016. *Id.* ¶ 45. As pertinent to this case, then, the order was in effect during the entire time period covering the events leading up to the September 2017 arrest.

On July 6, 2017, Hutson called the Plano Police to report that Mitchell was violating the order. DSOF, ¶ 49. Sergeant Aaron Smith and Officer Scott Hogan

5

responded to Hutson's call, and Hogan and Hutson signed a complaint for that violation. *Id.* ¶ 50. Mitchell was neither cited nor charged with criminal trespass based on the July 6, 2017 complaint. *Id.* ¶ 51.

Several weeks later, however, on August 23, Hutson again called the Plano Police to report that Mitchell was in violation of the order. DSOF ¶ 54. Hutson reported that she had heard yelling in her backyard, and when she looked outside, she saw Mitchell and Mitchell's dog in her backyard, around ten feet from Hutson's house. *Id.* Officer Hogan initially responded to that complaint, and Sergeant Smith and another officer, Officer Baxa, then arrived at the scene to assist Hogan. *Id.* ¶¶ 54, 59. Hogan was solely responsible for preparing and signing the reports relevant to the August 23 complaint. *Id.* ¶ 57. Mitchell again was not arrested on August 23, but a warrant for her arrest was filed later; Mitchell turned herself in, and is currently facing prosecution for that charge. *Id.* ¶¶ 66–70.

As discussed later in the Opinion, both Mitchell and the Defendants address the issue of whether Hutson displayed a "No Trespassing" sign in the window of her home. According to the Defendants, Hutson had this sign in her front window beginning in October 2015, and displayed it at all times relevant to this case. DSOF ¶¶ 55–56. In her summary judgment briefing, Mitchell contests this point, saying that there was no sign, that Hutson and Sergeant Smith have colluded to say that there was a sign, and thus they conspired to arrest her without probable cause. Pl.'s Resp. to Hutson Mot. Summary Judgment at 2–3. But much of Mitchell's briefing simply copies and pastes from the prior Opinion denying the Defendants' most recent motion to

6

dismiss; Mitchell does not cite to any *evidence*. What's more, as discussed earlier, Mitchell did not submit the required Local 56.1 response to the defense's statement of material facts, nor did she file the additional statement of facts allowed by the local rule. In contrast, the Defendants' statement of facts explicitly asserts that "Sgt. Smith never conspired with Ms. Hutson or anyone else to violate Ms. Mitchell's rights." DSOF ¶ 60. With no Local Rule 56.1 response to this, the Court deems this fact admitted: there was no conspiracy. It is worth noting too that, in light of the Stalking No Contact Order, whether Hutson displayed a No Trespassing sign is not important to the ultimate question of whether Mitchell was lawfully on Hutson's property.

Something else happened on August 23, 2017: Mitchell was cited for her dog running at large. DSOF ¶ 71. This citation forms the basis of Mitchell's malicious prosecution claim against Hutson. *Id.* ¶ 74. Around 3 or 4 o'clock in the morning on that date, Mitchell was in front of her home, and her dog was walking up the street. *Id.* ¶ 75. She has testified that her dog was indeed off-leash during this August 23 walk. *Id.* ¶ 72; R. 255-13, Mitchell Dep. 75:16. While standing in front of her own house, Mitchell saw Hutson come out of her house to pick up her newspaper, and then return indoors. DSOF ¶ 76. Mitchell's dog then proceeded toward the rear of Hutson's house, instead of returning to Mitchell. *Id.* ¶¶ 77–78. Mitchell lost sight of her dog after he turned toward Hutson's house. *Id.* ¶ 78. The dog then got into Hutson's house. *Id.* ¶ 79. The Defendants' statement of facts does not provide any more detail than this. In Mitchell's response to Hutson's summary judgment motion, Mitchell implies that Hutson intentionally took the dog—again, however, Mitchell does not

7

support this with any evidentiary citations. *See* Pl.'s Resp. to Hutson Mot. Summary Judgment, at 4.

## II. Standard of Review

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The Court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

### III. Analysis

It bears repeating that the analysis of Mitchell's claims must be premised, at this point, on the facts proffered by the defense. Mitchell failed to submit a response to the defense's Local Rule 56.1 statement, failed to submit her own additional statement of facts, and failed to submit any admissible evidence. So whether there is any genuine dispute of material fact is almost a foregone conclusion. Having said that, reasonable inferences are drawn in Mitchell's favor where possible, and the Court will address arguments that Mitchell has made that could put material facts at issue.

### A. Search of the Car

In targeting Mitchell's claim that Officer Joutras unreasonably searched the Mercedes, the Plano Defendants offer two arguments: first, that the search was reasonable because Mitchell's car was displaying false registration on a public roadway and Joutras conducted the search in accordance with the Plano Police Department Tow/Inventory Search Policy, and second, that Joutras is entitled to qualified immunity. R. 250, Plano Defs.' Brief at 2. The Court agrees with the Plano Defendants on both arguments, and will address qualified immunity first.

First, Officer Joutras is entitled to qualified immunity given the specific facts of the case. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In order for Mitchell to defeat Joutras' qualified immunity defense,

9

she "must show two things: first, that there has been a violation of one or more of her federal constitutional rights, and second, that the constitutional standards at issue were clearly established at the time of the alleged violation." *Campbell v. Peters*, 256 F.3d 695, 699 (7th Cir. 2001). That is, even if Joutras had violated Mitchell's Fourth Amendment rights, she would also need to show that the constitutional standard was "clearly established." "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted," *Saucier v. Katz*, 533 U.S. 194, 202 (2001), specifically, that "various courts have agreed that certain conduct is a constitutional violation under facts *not distinguishable in a fair way* from the facts presented in the case at hand." *Campbell*, 256 F.3d at 701 (quoting *Saucier*, 533 U.S. at 202) (emphasis in *Campbell*)).

Put more simply: to defeat qualified immunity, Mitchell would have needed to clearly establish that towing her car, and thus conducting a pre-tow inventory search, was unreasonable under the circumstances. The problem is that it is generally reasonable, under the Fourth Amendment, to conduct an inventory search before towing a car: inventory "[s]earches conducted by the police prior to towing a car are lawful if conducted pursuant to standard police procedures aimed at protecting the owner's property—and protecting the police from the owner's charging them with having stolen, lost, or damaged his property." *United States v. Cherry*, 436 F.3d 769, 772 (7th Cir. 2006) (cleaned up). With that background legal principle in place, Mitchell offers nothing in response. She thus has forfeited any argument against qualified

10

immunity. Instead, Mitchell argues only that "[w]arrantless searches are per se unreasonable subject to some defined exceptions," relying on *Neita v. City of Chicago*, 830 F.3d 494, 498 (7th Cir. 2016). R. 260, Pl.'s Resp to Plano Mot. Summ. J.. at 2. That is true so far as it goes, but an inventory search, like the one that Joutras had just started, is one of those exceptions to the warrant requirement. *United States v. Cartwright*, 630 F.3d 610, 613 (7th Cir. 2010); *South Dakota v. Opperman*, 428 U.S. 364, 376 (1976). Without more, Mitchell simply cannot defeat Joutras' qualified immunity defense.

In any event, aside from qualified immunity (though related to it), the Court also holds that Officer Joutras' decision to tow Mitchell's car in the first place was reasonable. Mitchell does not seriously contest that the car was not displaying proper registration at the time of the search; instead, she focuses her response brief on disputing whether Joutras was informed of this fact by a colleague or whether he saw the car's plates himself while out on patrol. Pl.'s Resp. to Plano Mot. Summary Judgment at 2. (Again, she does not include these facts, or any evidentiary basis for these assertions, in a Local Rule 56.1 statement of material facts.) But that is neither here nor there for purposes of determining whether Joutras followed a reasonable towing policy.

On that question—whether the Plano Police Department towing policy is reasonable—Section III of the policy provides that "Plano Police Action for a towed/impounded vehicle will be defined as a vehicle towed/impounded by the authorization

11

and/or direction of a police officer including but not necessarily limited to the following reasons:

1. Pursuant to the arrest of the driver
2. Vehicles involved in or containing evidence of criminal activity
3. Recovered vehicles
4. Illegally parked vehicles (if subject to removal).
5. Abandoned vehicles
6. Traffic crashes"

R. 255-8, Tow/Impounding and Inventory of Vehicles Policy at 1. The policy also provides that all tows must be conducted "in strict compliance" with, among other laws, 625 ILCS 5/11-1302, which, in turn, authorizes police officers to initiate a tow in a variety of situations, including when "the registration of the vehicle has been suspended, cancelled, or revoked." *Id.* at 2; 625 ILCS 5/11-1302(c)(4). Mitchell has mounted neither a facial nor an as-applied challenge to the constitutionality of this Illinois state law under the Fourth Amendment. So, absent an adversarial presentation by Mitchell, the towing policy must be deemed reasonable.

One final note is worth making. Remember that Officer Joutras entered the Mercedes to start the inventory search *before* Mitchell came outside (he had knocked on the house door on two separate occasions with no response). DSOF ¶¶ 17, 21. So, at the time he went inside the car, he knew facts that established probable cause to believe the Mercedes had been stolen; that in and of itself would also have justified a tow and inventory search. After running the plates and the VIN, Joutras knew that the plates "did not match the make, model or VIN" of the black Mercedes. DSOF ¶ 41. From the standpoint of a reasonable officer—the Fourth Amendment views the probable cause inquiry "objectively," *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)—the

mismatch in plates and VIN would supply probable cause that the car was stolen. *See, e.g.*, *United States v. Evans*, 27 F.3d 1219, 1229 (7th Cir. 1994) (affirming probable-cause finding where license plates did not match vehicle description).

In light of qualified immunity and the reasonableness of the search of the car, summary judgment must be entered in favor of Officer Joutras (and, by extension, the City of Plano on the indemnification claim).[2]

### B. False Arrest (Smith)

Next, Sergeant Smith argues that the false arrest claims against him (under both the Fourth Amendment and state law) must fail because he was not personally involved in the arrest. Remember that an arrest warrant was issued for Mitchell for trespassing on August 23, 2017, but Mitchell was not arrested until September 2017. DSOF ¶¶ 67–68; R.255-10, Mitchell Criminal Docket, at 1. The Plano Defendants establish in their statement of facts that Sergeant Smith was not personally involved in the September 2017 arrest. He responded to a complaint made by Hutson against Mitchell on *July 6*, 2017, for which Mitchell was *not* charged. DSOF ¶¶ 49, 51. A different officer, Officer Hogan, responded to Hutson's complaint of August 23, 2017. *Id.* ¶ 54. Hogan, and not Sergeant Smith, prepared and signed all of the relevant reports for the August 23, 2017 incident. *Id.* ¶¶ 57–58. (Sergeant Smith did respond

---

[2] The Plano Defendants also "note," in their words, an undeveloped argument that Mitchell might not have standing to bring any Fourth Amendment claim as to the Mercedes, because she was its owner at the time of the search. Plano Defs.' Br. at 11. But the Defendants did not develop this argument, so there is no need to decide it. It is worth observing that even individuals with only a possessory interest in a vehicle might very well have a sufficient expectation of privacy under the Fourth Amendment to challenge searches of the vehicle. *See United States v. Wilbourn*, 799 F.3d 900, 908 (7th Cir. 2015).

13

to the scene on August 23, but only to provide backup to Officer Hogan, along with another officer. *Id.* ¶ 59.) In short, the Plano Defendants have established conclusively—because Mitchell has not responded to their statement of material facts nor submitted a statement of additional facts—that Smith had no personal involvement in Mitchell's arrest and the subsequent prosecution based on the events of August 23, 2017.

In her response brief, Mitchell continues to assert, with no evidentiary support, that Sergeant Smith was involved in the arrest. Pl.'s Resp. to Plano Defs.' Mot. Summary Judgment at 3. Her failure to comply with Local Rule 56.1 and her failure to cite to evidence dooms the argument. Also, Mitchell actually appears to concede that Officer Hogan might, in fact, have been the correct defendant. She asserts, "When Plaintiff became aware Hogan was another officer involved with falsifying affidavits, she informed Defendants Counsel Jana Brady that Hogan should be added as a Defendant." *Id.* at 4. But merely informing opposing counsel that perhaps another party should be added or substituted is not enough to make it so. Mitchell never proposed an amended complaint to name Hogan, and the Court warned Mitchell, on December 3, 2019, that given the prolonged history of the case, she would have to file written motions for leave to amend the complaint. R. 220. She did not do that, and it is way too late to do so now. *See, e.g.*, *Johnson v. Methodist Medical Center of Ill.*, 10 F.3d 1300, 1303 (7th Cir. 1993). Summary judgment on the false arrest claims is granted in favor of Sergeant Smith (and, by extension, Plano on Mitchell's state law indemnification claim).

### C. False Arrest (Hutson)

Staying with the August 23, 2017 events for the moment, Mitchell also claims that Hutson conspired with the Plano Police to have Mitchell arrested. R. 68, Second Am. Compl. ¶¶ 36–37. There are two problems with this conspiracy claim that independently doom it. First, the Defendants' joint statement of material facts explicitly asserts that "Sergeant Smith never conspired with Hutson or anyone else to violate Mitchell's rights." DSOF ¶ 60. Again, Mitchell did not submit any Local Rule 56.1 filing, so this fact is conclusively established, thus fatally undermining the claim of conspiracy.

Second, Mitchell hinged the false-arrest claim on the argument that Hutson's house did not display a "No Trespassing" sign. Second Am. Compl. ¶ 36; Pl.'s Resp. to Hutson Mot. Summary Judgment at 2–4. Again, Mitchell did not support this theory with any evidence or offer a Local Rule 56.1 statement of facts. For their part, the Defendants submitted evidence that there was, in fact, a "No Trespassing" sign in Hutson's window on the day in question. DSOF ¶¶ 55–56; R. 255-6, Photographs of Hutson Residence. Beyond that, in light of the Stalking No Contact Order, which also prohibited Mitchell's presence on Hutson's property, the display of the sign is not even necessary for the defense to prevail. The false arrest claim against Huston is dismissed.

### D. Malicious Prosecution (Hutson)

Mitchell's final claim is that Hutson initiated a malicious prosecution against Mitchell for the dog-off-leash incident, when Mitchell's dog ran into Hutson's house.

15

Second Am. Compl. ¶ 30; DSOF, ¶¶ 71–79. The essence of the claim appears to be that Hutson lied to the 911 operator, as well as to the responding Plano officer, by stating that Hutson did not know whose dog had come into her house, when in fact she knew it was Mitchell's dog. Second Am. Compl. ¶ 30; Pl.'s Resp. to Hutson Mot. Summary Judgment at 4–5. Again, Mitchell has not supported this allegation with any evidence, and has not submitted a statement of material facts.

In any event, even if Hutson lied about not knowing whose dog had entered the house, still Mitchell could not prevail. Probable cause will thwart a malicious-prosecution claim, even if a complainant made up other facts surrounding the arrest: "Regardless of the defendants' motives toward the plaintiff, the existence of probable cause for arrest is an absolute bar to a Section 1983 claim for unlawful arrest, false imprisonment, or malicious prosecution." *Schertz v. Waupaca County*, 875 F.2d 578, 582 (7th Cir. 1989) (cleaned up). The absence of probable cause is also a requirement for a successful malicious prosecution claim under Illinois law. *Swick v. Liautaud*, 662 N.E.2d 1238, 1242 (Ill. 1996).

Here, during her deposition, Mitchell conceded that her dog was off-leash on the morning of August 23, 2017. DSOF ¶ 72; R. 255-13, Mitchell Dep. 75:16. Mitchell also testified that her dog could not have been on Hutson's property, as her own property was fenced, *id.* 75:17–20, but also admitted in the operative pleading that her dog *did* run into Hutson's home, and that Mitchell had to go to Hutson's home to retrieve her dog. Second Am. Compl. ¶ 30. The Plano Police Department Narrative summarizing the events of August 23 further states that Mitchell's dog was on

Hutson's property. R. 255-3, Plano Police Dept. Narrative, Case Report No. 2017-1248 at 5. (Remember that Mitchell did not submit a response to the Local Rule 56.1 statement.) The Plano City Ordinance prohibiting animals from running at large applied to the facts: "It shall be unlawful to permit any domestic animal to run at large on the property of any person but the owner thereof without the permission of the owner of the aforementioned property. Domestic animals which are running at large may be subject to citation and/or impoundment." R. 253, Hutson Br. at 7. Hutson has established factually both that Mitchell's dog was at-large, that is, off-leash, and that the dog was in Hutson's house. Hutson's alleged misrepresentation of the identity of the dog is simply irrelevant to the existence of probable cause. The malicious-prosecution claim must fail given that the off-leash citation was supported by probable cause

## IV. Conclusion

The Plano Defendants' and Trish Hutson's motions for summary judgment are granted in full on all claims. The tracking status hearing of April 9, 2021, is vacated. Final judgment shall be entered on the docket.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: March 30, 2021

17